UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re the Application of:** § <br> § <br> **Idalia Ochoa Dominguez, and** § <br> **Marco Antonio Aragon Leon** § <br>     Petitioners § <br> § <br>    and § <br> § <br> **Wendi Ochoa Perez, Elias Sanchez Corona,** § <br> **Isaias Sanchez Ochoa, Irene Trujillo Ascencio.** § <br> § <br>     Respondents § | Civil Action No. 24-CV-4736 |

**VERIFIED PETITION FOR RETURN OF MINOR CHILDREN
TO THEIR HABITUAL RESIDENCE, THE UNITED MEXICAN STATES**

### I.     INTRODUCTION

1. This Verified Petition for Return of Minor Children to their Habitual Residence, The United Mexican States, hereafter "Mexico", is brought by Idalia Ochoa Dominguez and Marco Antonio Aragon Leon (hereafter, "Petitioners") pursuant to the Convention on the Civil Aspects of International Child Abduction[1] (hereafter, "Convention") and 22 U.S.C. § 9003 (b), The International Child Abduction Remedies Act (hereafter "ICARA"), 22 U.S.C. 9001 et. seq. (2001), the Convention's implementing statute for the United States of America (hereafter, "United States"). Petitioner Idalia Ochoa Dominguez (hereafter, "Idalia") has filed an Application **(Exhibit "A")** for the return to Mexico of the minor children J.A.D. and W.Y.A.D., through the Central

---

[1] Done at The Hague, October 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 22514

Authorities of Mexico and the United States of America. Petitioner Marco Antonio Aragon Leon (hereafter "Marco") has filed an Affidavit supporting Idalia's Application and requesting the return of J.A.D. and W.Y.A.D. to Mexico. **(Exhibit "B").**

## II.    PARTIES

2.     Petitioners Marco and Idalia are life-long residents of Morelos, Mexico and the parents of J.A.D. and W.Y.A.D., minor children, born in Morelos, Mexico, ███████████, and ███████████, respectively. The children's certificates of birth accompany the application but are also attached separately as **Exhibit "C".**

3.     Respondents, Wendi Ochoa Perez, the minor children's maternal grandmother, is an undocumented Mexican alien believed to be residing at 53 Lander Street Fl 1, Newburgh, NY 12550 where service of process may be had. She resides with her husband, Elias Sanchez Corona, her son, Isaias Sanchez Ochoa, and her former sister-in-law, Irene Trujillo Ascencio (hereinafter, "Respondents'.) Respondents may be reasonably expected to receive personal notice of service of summons to any adult over the age of eighteen (18) at 53 Lander Street, Fl 1, Newburgh, NY 12550.

## III.    JURISDICTION AND VENUE

4.     This Court has jurisdiction of this cause pursuant to 22 U.S.C. §9001 et. seq.; 28 U.S.C. 1367(a); and 28 U.S.C.1331 because this matter involves the wrongful international retention of minor children under the age of sixteen (16). Upon information and belief, the minor children. J.A.D. and W.Y.A.D.., the subjects of this action, are located within the jurisdiction of this Court.

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) because Respondents reside within the judicial district of this Court.

### IV.  THE CONVENTION, GENERALLY

6.  The Convention went into effect in the United States on July 1, 1988, and on September 1, 1991 in Mexico- which is the effective date for the beginning of enforcement of the Convention between the two countries.[2] The Convention was adopted in 1980 in response to the problem of international child abductions during domestic disputes. *Monasky v. Taglieri*, 140 S. Ct. 719, 723 (2020), citing *Lozano v. Montoya Alvarez*, 572 U.S. 1, 4, 134, S.Ct. 1224, 188 L.Ed.2d 200 (2014) and *Abbott v. Abbott*, 130 S. Ct. 1983, 1990 (2010).

7.  The objects of the Convention are "To secure the prompt return of children wrongfully retained or removed in any Contracting State; and to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States. (*Abbott*, Id.; Convention Articles 1(a) and (b)).

8.  The Convention's primary aims are to "restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court." *Friedrich v. Friedrich,* 78 F.3d 1060, 1063 (6th Cir. 1996).  Requiring a return remedy in cases like this one helps deter child abductions and respects the Convention's purpose to prevent harms resulting from abductions. *Abbott, supra*.  According to this premise, the Convention limits its focus to deciding whether the minor should be returned to his or her country of habitual residence for custody proceedings; it

---

[2] Convention Status Table. https://www.hcch.net/en/instruments/conventions/status-table/?cid=24 .

does not establish any substantive standards for resolving the merits of any underlying custody dispute. *Mota v. Castillo*, 692 F.3d 108, 1115 (2d. Cir. 2012); *Asvesta v. Petroutsas*, 580 F.3d 1000, 1015 (9th Cir.2009) (The Convention is clear that a court considering a Hague petition should not consider matters relevant to the merits of the underlying custody dispute such as best interest of the Child, as these considerations are reserved for the courts of the child's habitual residence.") *Croll vs. Croll*, 229 F.3d 133, 137 (2d Cir. 2000) (The Hague Convention adopts the principle that the child's country of habitual residence is "best placed to decide upon the question of custody and access.")

### V. *PRIMA FACIE* CASE FOR RETURN OF MINOR CHILDREN TO MEXICO

9. Pursuant to the Convention, "The removal or the retention of a child is to be considered wrongful where:

a) it is in breach of rights of custody attributed to a person, an institution, or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b) at the time of removal or retention those rights were actually exercised, either jointly or alone or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State." (Convention, Article 3).

10. A *prima facie* case for wrongful removal (or retention) pursuant to the Convention consists of three (3) elements that must be established by a preponderance of the evidence. *Larbie v. Larbie*,

690 F. 3d. 295, 307 (5th Cir. 2012). "First, the petitioner must show that the respondent removed or retained the child somewhere other than the child's habitual residence." *Second, if petitioner is successful in proving the threshold element, then the* "question becomes whether the removal or retention violated the petitioner's 'rights of custody' under the habitual-residence nation's laws." (citations omitted). And third, if petitioner has rights of custody under the habitual-residence nation's laws, then petitioner need only make a final showing that "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." *(quoting Convention* Article 3(b)).

11.     <u>Mexico is the habitual residence of J.A.D. and W.Y.A.D.</u> While habitual residence is not defined in the Convention or ICARA, the United States Supreme Court has determined that a child's habitual residence depends on the totality of the circumstances specific to the case. *Monasky* at 723.  Thus, Courts are free to look into the facts relevant to whether children are acclimatized to a residence as well as the shared intentions of the parents.

> "For older children capable of acclimating to their surroundings, courts have long recognized, facts indicating acclimatization will be highly relevant. Because children, especially those too young or otherwise unable to acclimate, depend on their parents as caregivers, the intentions and circumstances of caregiving parents are relevant considerations." *Id* at 727.

Before being retained in New York, J.A.D. and W.Y.A.D. had spent their entire lives in Mexico. Mexico was their home and that in and of itself is sufficient to make it their habitual residence. "The place where a child is at home, at the time of removal or retention, ranks as the child's habitual residence." *Id* at 726,727, citing *Karkkainen v. Kovalchuk*, 445 F.3d 280, 291 (CA3 2006).  Mexico

is the habitual residence of J.A.D. and W.Y.A.D. within the meaning of Article Four of the Convention.

12. As parents, Petitioners have rights of custody of J.A.D. AND W.Y.A.D. in their habitual residence of Mexico pursuant to the civil law and jurisprudence of Mexico. The applicable law in this case is 1) the civil codes of the state of Morelos, Mexico, a translation of which accompanies the application but is also separately attached as **Exhibit "D"** and 2) the legal doctrine of *Patria Potestad* – a term derived from the Latin "*patria potestas*," which in Roman law, conveyed absolute and despotic rights of a father over his children. Patricia Begné, *Parental Authority and Child Custody in Mexico*, 39 Fam. L.Q. 5s27, 527, 529 (2005). In Mexico, *Patria Potestad* is the "most comprehensive" right that a parent can exercise over the person and property of his or her minor children. Stephen Zamora, José Ramón Cossío, Leonel Pereznieto, José Roldán-Xopa, and David Lopez, *Mexican Law, Oxford University Press, (2005)*. <u>Also see</u>, *Saldivar v. Rodela,* 894 F.Supp.2d 916 (2012), discussing the doctrine and quoting *Begne* and *Zamora, et al,* at length. Petitioners have *ne exeat* rights to consent to the retention of their minor children J.A.D. AND W.Y.A.D. from Mexico pursuant to their rights of *Patria Postetad* and the right to determine their place of residence within the meaning of Articles Three, Five and Twenty-One of the Convention.

13. Petitioners had or would have been exercising their rights of custody at the time of the wrongful retention *but for the wrongful retention* of J.A.D. AND W.Y.A.D. by Respondent in New York and away from Mexico. <u>See</u>, Application, **Exhibit A,** and **Exhibit B**.

14. **The petitioners' last shared intention at the time of the children's retention was that the children return to and reside in Mexico** until the family could move as an integral unit to

<u>the United States.</u>  As set forth in Idalia's application and Marco's Affidavit, the parents had decided to move as a family to New York and agreed that the best strategy for successfully crossing the border into the United States, was for Marco to cross with the children.  Upon their successful entrance into the United States, Idalia would immediately attempt to cross on her own.  The strategy failed.  Marco was detained at the border by United States Customs and Immigration Service Border Patrol.

15. After two (2) months in a detention facility in Tuscon, Arizona, Marco was given the option of going back to Mexico or remaining in jail.  In the meantime, the children were taken by the persons they crossed the border with to the residence of Respondents.  As soon as Marco returned to Morelos, Petitioners immediately requested Respondents to return the children to Mexico but they refused and continue to refuse to do so.  On September 27, 2022, Idalia reluctantly prepared and submitted her application accusing Respondents, and in particular, Wendi Ochoa Perez, her own mother, of wrongfully retaining the children in the United States and seeking their return to Mexico. On or about July 2023, Respondents cut off all communications between Petitioners and the children.  As a result of the retention, Petitioners have not seen nor heard from their children since then.

16. <u>The retention of the children in New York is wrongful</u>.  Respondents have refused to communicate with Petitioners and ignored settlement letters sent by the Central Authorities of Mexico and the United States. At no time has there ever been any shared intention of Petitioners to establish the United States as a new habitual residence of J.A.D. and W.Y.A.D. without their being physically present with them.  The children are of insufficient age to have become acclimated

to New York the past eighteen months. The retention of J.A.D. and W.Y.A.D. by Respondents in the United States is wrongful pursuant to Article 3 of the Convention because it is in breach of Petitioners' rights of custody, including the right to determine the residence of J.A.D. and W.Y.A.D.

### VI. NO EXCEPTIONS PREVENTING RETURN OF CHILDREN TO MEXICO

17. The Petitioners did not consent to, nor did they subsequently acquiesce in, the retention of J.A.D. and W.Y.A.D. outside of Mexico without being together with them as a family unit. This proceeding was commenced slightly more than one (1) year from the date of wrongful retention of J.A.D. and W.Y.A.D. However, pursuant to Article 12 of the Convention, their return forthwith to Mexico shall be ordered by the Court unless it finds that the children are settled. The children, now only two (2) and ten (10) years of age are clearly too young to be reasonably expected to have become settled in New York in the company of Respondents, who have cut them off from their parents and otherwise alienated them and for more than 18 months.

18. This Court ordering the immediate return of J.A.D. and W.Y.A.D. to their habitual residence in Mexico will not expose them to a grave risk of physical or psychological harm nor otherwise place them in an intolerable position pursuant to Article 13(b) - nor would their return be prohibited under the fundamental principles of the United States relating to the protection of human rights and fundamental freedoms pursuant to Article 20 of the Convention. Further, there are no facts supporting any other exception to the return of J.A.D. and W.Y.A.D. to Mexico.

### VII. EXPEDITIOUS PROCEDURES

19. The primary objective of the Convention is "to secure the *prompt return* of children wrongfully removed to or retained in any Contracting State; and to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." (Convention, Article 1) (Emphasis Added). The Convention, Article 2 provides that the Contracting States "…shall use *the most expeditious procedures available*." (Emphasis added). The Convention, Article 11 provides that "The judicial or administrative authorities of Contracting States *shall act expeditiously in proceedings for the return of children*." (Emphasis added). ICARA expressly provides that "Children who are wrongfully removed or retained within the meaning of the Convention are to be *promptly returned*…" 22 U.S.C. § 9001 (a) (4*)* (Emphasis added). Courts hearing Convention cases *should proceed and rule on such cases expeditiously*. *Abbott, supra.* (Emphasis added). "… *the Convention instructs contracting states to "use the most expeditious procedures available" to return the child to her habitual residence. Art. 2, Treaty Doc., at 7. See also Art. 11, id., at 9 (prescribing six weeks as normal time for return-order decisions*)." *Malasky* at 724. (Empasis added).

### VIII. PROVISIONAL REMEDIES

20. This Court, in furtherance of the objective the Convention may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent further removal or concealment before the final disposition. 22 U.S.C. § 9004.

21. Respondents wrongfully retained J.A.D. and W.Y.A.D. in the United States. Petitioners seek an *Ex Parte* Temporary Restraining Order *Ne Exeat* which is to be served upon the Respondents with the other initiating process and documents. Petitioners request that the Court

order the surrender of the children's passports or other travel documents, if any, at the time of service. Petitioners also request that the hearing on the TRO be consolidated with the hearing on the preliminary injunction motion and with a hearing on the merits of the Verified Petition to Return, pursuant to Rule 65(a) (2) of the Federal Rules of Civil Procedure. In the alternative, Petitioners request that the Court order an expedited hearing on the merits of the Verified Petition to Return.

22. The procedural vehicle for a temporary restraining order without notice is Federal Rule of Civil Procedure 65(b) and allows the application and issuance to be made *ex parte*. New York state law allows identical ne exeat order pursuant to New York Family Code Act Article 10. The legal effect of the order is to preserve the residence and location of the child so a court may effectively adjudicate a pending action. Therefore, this application follows 22 U.S.C. § 9004 and is in accord with state law in its substance and procedure. The Order *Ne exeat* affords precisely the same due process rights of immediate redress to the court. A copy of the New York Family Code Act Article 10 is attached as **Exhibit "E"** for the court's reference.

23. In *Klam v Klam*, 797 F Supp 202, 206 (EDNY 1992), interpreting 22 USC § 9004(a), reference is made to due process under state child custody jurisdictional procedural law. In New York, the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), New York Domestic Relations Law Art. 5-a), provides for the same relief in that it authorizes a warrant to take physical custody of a child if under subsection (a)" ... if the child is immediately likely ... [to] be removed from this state". The warrant may be obtained *ex parte*. The temporary restraining order *ne exeat* requested by Petitioners and requiring maintenance of the children's present

location and prohibiting their removal from the state, is in accord with the remedies available to the court under the authority of 22 USC § 9004.

24. Petitioners request an order restraining any removal of the minor children J.A.D. and W.Y.A.D. from the state of New York and their present location until the case can be brought before the court. This order is not a custody determination in that it does not establish, change, or modify legal or physical custody, or any custody or access rights.

25. The Federal Rules of Civil Procedure require the posting of security by plaintiffs "in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." FRCP 65(c). Petitioners are of modest economic means and request the Court grant them a waiver to the posting of security because they have, by this pleading, established a *prima facie* case for return of the children to Mexico pursuant to the Convention. There is little or no likelihood that the Respondents will suffer any costs or damages during the pending expedited proceedings in which she may exercise their right to immediate redress at the hearing to be set by this Court. Further, this Order will not cause the removal of the minor children from Respondents during the pendency of the hearing, although the *Klam* case, and other cases authorize their removal.

26. Pursuant to the Convention Article 21, this Court should provide an order for interim, access and visitation in person, and unfettered telephone and other social media access of the Petitioners with J.A.D. and W.Y.A.D. pending the final outcome herein.

27. It is requested that the Court order Respondents and any other persons having current control and custody over J.A.D. and W.Y.A.D. to personally appear in Court. *Zajackenska v.*

*Zajackenska*, 932 F. Supp. 128, 132 (the Court must treat the Convention petition as an application for a Writ of Habeas Corpus…pursuant to 28 U.S.C.A. 2243). However, Petitioners respectfully ask that the Children not be required to appear in Court.

28. The issue of custody must be addressed under Mexican Law.

29. Pursuant to Article 14 of the Hague Convention, this Court may take notice directly of Mexico's law without recourse to the specific procedure for proof of that law. See also Article 15; Fed. R. Civ. P.

30. An Affidavit Pursuant to F.R.C.P. 65(b) (2) is attached as **Exhibit "F".**

### IX. NOTICE OF HEARING

31. Pursuant to 22 U.S.C. § 9003(e), the Petitioners request that Respondents be given notice of any hearing in accordance with the New York Uniform Child Custody Jurisdiction and Enforcement Act, Domestic Relations Law §§ 70 and 71 and C.P.L.R. §§ 7001 et. Seq, and New York Family Code Act Article 10.

### X. ATTORNEYS' FEES AND COSTS

32. Petitioners have incurred and will continue to incur substantial expenses as a result of the wrongful retention of the children. Petitioners will submit a copy of all expenditures and will amend those costs according to proof and in light of further expenditures. Petitioners respectfully request that this Court award all legal costs and fees incurred to date as required by 22 U.S.C. § 9007(3), reserving jurisdiction over further expenses.

### XI. RELIEF SOUGHT

33. WHEREFORE, Petitioners respectfully request the following relief:

a. An Order directing the prompt return of J.A.D. and W.Y.A.D. to Mexico;

b. An Order directing the Respondents to arrange for and permit Petitioners immediate, regular and unfettered physical, telephonic and other social media access to J.A.D. and W.Y.A.D. pending the resolution of this matter;

c. A Temporary Restraining Order setting an expedited hearing on the Petition for Return and Access, and ordering the Respondents to appear personally in this Court;

d. A *ne exeat* order, prohibiting the removal of the minor children J.A.D. and W.Y.A.D. from the jurisdictional limits of this Court;

e. Consolidation of the hearing on the Temporary Restraining Order with any hearing on a Preliminary Injunction and with the hearing on the merits of the Petition for Return and immediate access to the minor children;

f. Reasonable attorney's fees and costs.

g. General Relief.

h. Any other relief this Court deems just and proper.

Dated: June 21, 2024

Respectfully submitted,

/s/ *Soraya Ruiz Abderrashman*

_____
SORAYA RUIZ ABDERRASHMAN
*Attorney for Petitioners*
SDNY BAR # SR 2671
Ruiz Abderrashman Law Firm, P.C.
295 Madison Avenue, 12th Floor
New York, NY 10017
Telephone: 212.231.0009  Fax: 212.231.1087
sruiz@ralawfirmpc.com