# EXHIBIT
# E

# NEW YORK FAMILY LAW
# ARTICLE 10
# CHILD PROTECTIVE PROCEEDINGS

# Chapter 9: **Family Court Proceedings (Article 10)**

**A.  Introduction to Article 10 proceedings** ................................................................ **A-1**

**B.  Court-ordered CPS investigations** ..................................................................... **B-1**

**C.  Originating an abuse or neglect petition** ........................................................... **C-1**

**D.  Court-ordered services** .................................................................................... **D-1**

**E.  Temporary orders, other than removal, to safeguard the child** ........................ **E-1**

   1. Types of orders ................................................................................................ E-1

      *a.  Order for services* ....................................................................................... *E-1*

      *b.  Order for medical procedures* ...................................................................... *E-1*

      *c.  Pre-petition order of protection* .................................................................... *E-1*

   2. Requirement to inform the parent(s) of CPS's intent to seek a  court order ........ E-2

**F.  Removing a child** ............................................................................................... **F-1**

   1. Search for placement resources ....................................................................... F-2

      *a.  Notification of identified potential placement resources* ............................... *F-2*

      *b.  Reporting and documenting the search for placement resources* ................. *F-3*

   2. Temporary removal with consent ...................................................................... F-3

      *a.  Requirements for removal with consent* ...................................................... *F-3*

      *b.  Written notice* ............................................................................................. *F-3*

      *c.  Documentation requirement for removal with consent* .................................. *F-4*

      *d.  Requirement to file petition* ........................................................................ *F-4*

   3. Removal without consent – temporary order ..................................................... F-4

      *a.  Conditions necessary for temporary removal without consent* ..................... *F-4*

      *b.  Timeframe for court hearing* ....................................................................... *F-4*

      *c.  Court determination authorizing temporary removal* .................................... *F-4*

      *d.  Executing the removal* ................................................................................ *F-6*

   4. Emergency removal without court order or parental consent.............................. F-6

      *a.  When emergency removal is permitted* ........................................................ *F-6*

      *b.  Required procedures for an emergency removal* .......................................... *F-7*

      *c.  Method of serving the notice* ...................................................................... *F-7*

**G.  Hearings after filing a petition for removal of a child** ....................................... **G-1**

1. Preliminary orders issued by the court at the hearing.........................................G-1

    *a. Removals*.................................................................................................*G-1*

    *b. Search for placement resources* .............................................................*G-2*

    *c. Placement or remand*.............................................................................*G-2*

2. Other orders ........................................................................................G-3

    *a. Medical procedures* ...............................................................................*G-3*

    *b. Visitation by respondent after removal*......................................................*G-3*

**H. Summonses and required notifications** ..............................................................**H-1**

1. Notice of pendency of a child protective proceeding ..........................................H-1

2. Notice of removal for a non-custodial parent....................................................H-2

3. Intervention by other interested people ..........................................................H-2

**I. Adjournment in contemplation of dismissal (ACD)** ...............................................**I-1**

1. Provisions for adjournment in contemplation of dismissal (ACD).........................I-1

2. Factors determining CPS's consent to an ACD.................................................I-2

3. CPS requirements for ACDs ........................................................................I-2

**J. Rules and standards for Family Court hearings** ....................................................**J-1**

1. Rules and standards of evidence ..................................................................J-1

2. Sequence of hearings ................................................................................J-2

3. Sustaining or dismissing a petition ...............................................................J-2

4. Disposition on adjudication .........................................................................J-3

**K. Disposition on adjudication** ............................................................................**K-1**

1. Suspended judgment ................................................................................K-1

2. Release to a non-respondent parent, legal custodian, or guardian......................K-1

3. Placement in foster care ............................................................................K-2

    *a. Permanency hearings*............................................................................*K-3*

    *b. Notice of permanency hearings* ..............................................................*K-3*

    *c. Permanency Hearing Report (PHR)*..........................................................*K-4*

    *d. Permanency hearing findings*..................................................................*K-5*

    *e. Placement with relatives* ........................................................................*K-5*

4. Order of protection (OOP)...........................................................................K-6

    *a. Orders of protection issued in conjunction with other court orders* ................*K-6*

    *b. Orders of protection issued independently of other orders*............................*K-6*

5. Order of supervision............................................................. K-7

    a.   *Reporting requirements for orders of supervision*......................................... K-*8*

**L.** **Expiration of orders** ............................................................**L-1**

**M.** **Termination of reasonable efforts in aggravated circumstances** .................... **M-1**

**N.** **Termination of parental rights due to severe or repeated abuse**..................... **N-1**

1. Severely abused child........................................................ N-1

2. Repeatedly abused child..................................................... N-2

**O.** **Abandoned child (under age one)**........................................................**O-1**

# Chapter 9: **Family Court Proceedings (Article 10)**

## A. Introduction to Article 10 proceedings

The Family Court Act (FCA) Article 10 is "...designed to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental and emotional well -being. It is designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met [FCA §1011]."

Local Child Protective Services (CPS) provides services to families who are named in reports to the Statewide Central Register of Child Abuse and Maltreatment (SCR) with the intent to prevent future injury or harm to children, to safeguard the welfare of children, and to preserve and stabilize families, whenever possible. Circumstances may require CPS to seek intervention from the Family Court. Family Court has the authority to issue orders of protection, adjudicate child abuse and neglect petitions, compel protective services, and place children in foster care or other out-of-home placements.

Section 1018 of the FCA provides that the court may at any time in an Article 10 proceeding authorize the use of conferencing or mediation to further a plan that fosters the child's health, safety and well-being. The conferencing or mediation may involve interested relatives or other adults who are significant in the life of the child [FCA §1018].

The Family Court may transfer an Article 10 proceeding to Criminal Court if it concludes that the Criminal Court is the proper venue. Likewise, a Criminal Court may transfer a criminal matter to the Family Court if the allegations in a criminal complaint contain allegations of child abuse or maltreatment. The Family Court and Criminal Court are also permitted to hold concurrent proceedings [FCA §1014].

CPS must be knowledgeable of the provisions contained in FCA Article 10, as the law provides for the specific court procedures to intervene with a family and details CPS responsibilities in such proceedings.

This chapter outlines the relevant provisions of FCA Article 10. When CPS or other LDSS staff have legal questions related to FCA Article 10, however, a consultation with the CPS attorney is required. CPS attorneys can also consult with OCFS legal counsel where appropriate.

The matters addressed in this chapter are of utmost importance to the families that are brought before the court, and the actions taken by CPS and by the court can have a significant impact on the lives of those families. CPS should therefore be aware of each family's right to be informed of what is happening in a manner that the family members can understand.

CPS caseworkers should explain (in person, to the extent possible) the potential outcomes of any petitions that are filed in Family Court. They should be aware of any cultural differences and language barriers that may impede the family's ability to understand the situation, and endeavor to address those issues. When any member of the family has Limited English Proficiency (LEP) or a hearing impairment, the CPS must make reasonable efforts to provide an interpreter. Similarly, for LEP and visually impaired persons, CPS must provide translations of vital documents to clearly inform the parent(s) about actions that may affect their families. Once the matter is before the court, it is the responsibility of the Family Court to provide language services where needed.

## B. Court-ordered CPS investigations

A Family Court judge may order CPS to conduct an investigation at any time during the Article 10 proceeding, or whenever the court needs to determine whether allegations before the court require the filing of an Article 10 petition.

The Surrogate's Court Procedure Act (SCPA) requires the court to order CPS to investigate under certain circumstances after a petition to obtain temporary guardianship of a pre-adoptive child has been filed [SCPA §1725(4)(c)]. Specifically, a Surrogate's Court judge must issue an order for a CPS investigation under any of these circumstances:

- The court denies an application for temporary guardianship
- The court removes a child from the physical custody of the petitioner seeking temporary guardianship
- An order of temporary guardianship expires before the adoption has been finalized
- The petition for adoption is withdrawn or denied

> ### *Investigation findings*
>
> If a Family Court judge orders a CPS investigation, CPS is required to report its findings directly to the judge who issued the order (commonly referred to as a "1034 Report"). CPS should also notify the SCR of the investigation and findings [FCA §1034].

## C. Originating an abuse or neglect petition

An FCA Article 10 proceeding is originated by the filing of a petition which alleges facts sufficient to establish that a child is an abused or neglected child, as those terms are defined by FCA §1012(e) and (f) [FCA §1031]. CPS or any person authorized by the Family Court may initiate an Article 10 proceeding [FCA §1032]. The parent, guardian or other person legally responsible for the child who is alleged to have abused or neglected the child is referred to as the "respondent" [FCA §1012(a)].

If a child was removed from the home prior to the filing of the petition of abuse or neglect, the petition must also include all of the following information:

- The date and time of removal

- The circumstances necessitating the removal

- Whether the removal was pursuant to FCA §§1021, 1022, or 1024

- If the removal took place without a court order, the reason there was not sufficient time to obtain a pre-removal court order pursuant to FCA §1022 [FCA §1031(e)]

If the petition alleges child abuse, the petition is required by law to contain a notice in conspicuous print that if there is a judicial determination by clear and convincing evidence that the child was severely or repeatedly abused, the determination could constitute a basis to terminate parental rights in a proceeding held pursuant to SSL §384-b [FCA §1031(f)].

CPS may find it necessary to file an Article 10 petition in Family Court during a CPS investigation if court intervention is required to protect the child from being abused or neglected.

Once CPS has filed an Article 10 petition, CPS (CPS) may also seek any temporary court orders it deems necessary for the safety of the child, such as an order of protection, an order for the respondent to participate in services, or an order directing the respondent to undergo an assessment.

## D. Court-ordered services

A Family Court judge may order an LDSS official to provide or arrange for services or assistance to the child and his/her family to facilitate these goals:

- The protection of the child

- The rehabilitation of the family

- As appropriate, the discharge of the child from foster care [FCA §1015-a]

A court order requiring the LDSS to provide services may include only those services described in the LDSS's current Comprehensive Annual Services Program Plan.

The provision of court-ordered services or assistance may serve to prevent or eliminate the need for removal of a child from his or her home.

With any order issued under this section of the Family Court Act, the Family Court may require an LDSS official to make periodic progress reports to the court on the implementation of the order. If a Family Court determines that an LDSS official has violated an order, the court has the authority to fine and/or imprison the LDSS official who violated the order [Judiciary Law §753].

# E. Temporary orders, other than removal, to safeguard the child

Under federal and state law, LDSSs have a responsibility, where appropriate, to make reasonable efforts to prevent or eliminate the need for removal of the child from the home. The term "reasonable efforts" is not defined in statute or regulation.

Depending on the facts of the case, it may be that measures other than removal can be taken that will avoid the imminent risk to the child's life or health and allow the child to remain in the home. In other cases, because of the circumstances and the risk to the child, no efforts may be reasonable. CPS must document the efforts that were made or the reasons why such efforts were not made.

If the court finds that reasonable efforts were not made, but that such efforts were appropriate under the circumstances, the court must order CPS to provide or arrange for the provision of appropriate services or assistance to the child and the child's family pursuant to FCA §1015-a or §1022(a) & (c).

If CPS requests the court to issue a pre-petition temporary removal order, the court, in determining whether removal of the child is necessary to avoid imminent risk to the child's life or health, must also consider and determine in its order whether continuation in the child's home would be contrary to the best interests of the child [FCA §1022(a)].

## 1. Types of orders

CPS may request the Family Court to issue any of the following orders independent of a request for removal.

### a. *Order for services*

The Family Court may order an LDSS official to provide or arrange for the provision of services or assistance to the child and his/her family [FCA §§1015-a, 1022(a) and (c)]. See **Section D** of this chapter.

### b. *Order for medical procedures*

Under certain conditions, the Family Court may issue an order for medical and surgical procedures, when the procedures are necessary to safeguard the life or health of the child and there is not enough time to file a petition and hold a preliminary hearing [FCA §1022(c)].

### c. *Pre-petition order of protection*

CPS or any person authorized to initiate an Article 10 proceeding may seek a temporary order of protection on behalf of a parent and/or child [FCA §1029]. When an order of protection is issued, the Family Court may also issue a warrant for the respondent named in the order of protection and require him/her to appear in court. [FCA §1037].

If an Article 10 petition is not filed within 10 days of the order of protection being issued, the order of protection will be vacated [FCA §1029]. A pre-petition order of protection may include any provision that could be included in an order of protection issued after a fact finding of abuse or neglect, and may order the respondent to:

- Stay away from the home, school or business or place of employment of the child, other spouse, parent or person otherwise legally responsible for the child's care and to stay away from any other specific location designated by the court

- Permit a parent, or other person entitled to visitation by a court order or separation agreement, to visit the child at stated periods

- Refrain from committing a family offense (as defined in FCA §812) or any criminal offense against the child, other parent, or any person to whom custody of the child is awarded or from harassing, intimidating, or threatening such persons

- Permit a designated person to enter the residence during a specified period of time to remove personal belongings that are not at issue in the Article 10 proceeding or another proceeding

- Refrain from acts of omission or commission that create an unreasonable risk to the health, safety, and welfare of the child

- Provide for medical care and/or treatment, either directly or by medical or health insurance, for expenses incurred as the result of the incidents that led to the order of protection

- Refrain from injuring or killing, without justification, a companion animal the respondent knows to be owned, possesses, leased, kept, or held by the person protected by the order of protection or a minor residing in such person's household

- Promptly return specified identification documents to the person protected by the order of protection (e.g., birth certificates, DMV registration)

- Observe such other conditions as the court determines are necessary for the purposes of protection

## 2. Requirement to inform the parent(s) of CPS's intent to seek a court order

CPS must make every reasonable effort, with due regard for any necessity for immediate protective action, to inform the parent or person legally responsible for the child's care (PLR) of CPS's intention to seek a temporary order of removal, an order for the provision of services or assistance, or an order of protection [FCA §1023]. The parent or PLR should be notified in writing, if possible, of:

- The LDSS's intent to apply for the order

- The date and the time the application will be made

- The address of the court where the application will be made

- The right of the parent or PLR to be present at the application and at any hearing held thereon

- The right of the parent or PLR to be represented by counsel, including procedures for obtaining counsel, if indigent [FCA §1023].

If CPS is unable to provide the parent or PLR with written notice prior to the time the application is to be made, CPS should attempt to verbally inform such person(s), either in person or by telephone, of the intent to apply for a temporary order of removal.

# F. Removing a child

New York's laws and policies generally aim to keep children with their families. When, however, a child's safety or health is at imminent risk or the child's best interests are not met by remaining with his or her family, concern for the safety of the child takes precedence over family preservation.

The removal of a child from his or her home may occur in any of the following circumstances:

- Temporary removal with consent – The parent or PLR consents to the removal of the child [FCA §1021]

- Pre-petition court order - The Family Court issues an order after a hearing directing the removal of the child before an Article 10 petition has been filed [FCA §1022]

- Emergency removal without court order – CPS or a law enforcement official (e.g., police officer, peace officer) takes the child into protective custody without the consent of the parent or PLR [FCA §1024]

- Post-petition court order – The court issues an order after a hearing directing the removal of the child after the Article 10 petition has been filed [FCA §1027]

Whenever an LDSS removes a child from his or her home in an Article 10 proceeding, the Family Court must hold a hearing prior to a final order of disposition**.** With proper notification by the LDSS, the hearing may be held even in the absence of the respondents and regardless of whether the respondents file an application for the return of the child [FCA §1027]. Certain forms of hearsay testimony are allowed at removal hearings [FCA §1046]. Where a child has been removed without court order or pursuant to an order issued under FCA §1022, a hearing is usually held the next court day after the removal.

According to state law, a child may be removed from the home without the consent of the parent only when it is necessary to avoid imminent danger to the child's life or health [FCA §§1022 and 1024]. The FCA sets up a continuum of available actions on the part of CPS when removal is necessary.

When the parent does not consent, and, if there is insufficient time in the matter to apply for a court order and the matter is urgent, CPS may remove a child without a court order and subsequently request a temporary order of removal. CPS may request removal when filing an Article 10 petition or at any time during the Article 10 proceedings as necessitated by circumstances [FCA §1027].

See **Section J**, *Rules and standards for Family Court hearings*, for an overview of how to proceed in situations where the parent consents to the removal.

---

*Reasonable efforts to prevent removal*

In 2004 the New York State Court of Appeals issued a decision in the case Nicholson, et al. v. Scopetta, et al., 3 N.Y.3d 357, 787 N.Y.S.2d 196 (2004) which discussed at length Family Court-ordered removal of children. OCFS issued a Local Commissioner's Memorandum (LCM) on the decision that can be found on the OCFS intranet website (www.ocfs.ny.gov or http://ocfs.state.nyenet) as policy directive 04-OCFS-LCM-22.

In brief, in Nicholson, the NYS Court of Appeals held that, before issuing a removal order, the Family Court must do more than identify imminent risk of serious harm. The Family Court must weigh whether the harm can be mitigated by reasonable efforts to prevent removal. Additionally, the court must determine whether removal is in the best interests of the child by balancing the risk if the child stays in the home against the harm removal might cause the child.

---

## 1. Search for placement resources

When the Family Court determines that a child must be removed from his or her home pursuant to Article 10, Part 2, or placed pursuant to FCA §1055, the Family Court shall direct the LDSS to conduct an immediate investigation to locate relatives of the child as placement resources. OCFS regulation requires that within 30 days after the removal of the child, or earlier if ordered by the court or required by SSL §384-a, the LDSS exercise due diligence to identify the child's relatives [18 NYCRR 430.11(c)(4)]. These relatives must include the following:

- Any non-respondent parent of the child[1, 2]

- Any relatives of the child, including all of the child's grandparents

- All relatives or suitable persons identified by any respondent or non-respondent parent

- Any relative identified by a child over the age of five as a relative who plays or has played a significant positive role in his or her life

- All non-common parents of sibling(s) or half-sibling(s) where such parent has legal custody of the sibling(s) or half-sibling(s). This includes both biological and adoptive parents[3] [FCA §1017; 18 NYCRR 430.11(c)(4)]

The court shall also direct the LDSS Commissioner to report efforts to locate any person who is not recognized as the child's legally identified parent but who has filed with the punitive father registry, has a paternity petition pending, or has been identified as a parent by the child's other parent in a written sworn statement [FCA §1017(1)(b)]

### a. *Notification of identified potential placement resources*

The LDSS Commissioner must provide written notice of the pending Family Court proceeding to all individuals identified as potential placement resources and inform them of the opportunity for:

- Non-respondent parents to seek temporary release of the child under FCA Article 10 or custody under FCA Article 6

- Relatives to seek to become foster parents, to receive direct legal custody and provide free care under FCA Article 10, or to seek custody under FCA Article 6

- Suitable persons to seek to become foster parents, to receive direct legal custody and provide free care under FCA Article 10, or to seek guardianship under FCA Article 6 [FCA §1017]

Copies of relevant notices are available on the Office of Court Administration's (OCA) website at: https://www.nycourts.gov/forms/familycourt/childprotective.shtml.

---

[1] OCFS. (2002). "Changes to the Family Court Act Regarding Child Protective and Permanency Hearings, Including Changes Affecting the Rights of Non-Respondent Parents" (17-OCFS-ADM-02)

[2] Parent means a person who is recognized under the laws of New York State to be the child's legal parent (17-OCFS-ADM-02)

[3] OCFS. (2015). "Definition of Siblings and Expansion of the Relative Notification Requirements" (15-OCFS-ADM-01).

### b.  *Reporting and documenting the search for placement resources*

CPS must report the results of the search for placement resources to the court and all parties, including the attorney for the child [FCA §1017]. CPS also must document the results of its search in CONNX Progress Notes in the permanent case record. Documentation must include the following information about a non-respondent parent:

- Name
- Last known address
- Social Security number
- Employer's address
- Any other identifying information known to the LDSS [FCA §1017(1)(a)]

## 2.  Temporary removal with consent

### a.  *Requirements for removal with consent*

A child may be temporarily removed from his or her residence with the written consent of his or her parent or PLR if the child is suspected to be an abused or neglected child [FCA §1021]. See **Chapter 14:** *Appendices*, for a model consent letter for temporary placement of children in foster care pursuant to FCA §1021.

When a parent or PLR is asked to sign a removal consent form, CPS must make reasonable efforts to inform the parent(s) about what is involved in a CPS removal and the ramifications of the parent(s) consenting to the child's removal. Reasonable efforts include, but are not limited to, providing an interpreter or other language services if the parent or PLR has Limited English Proficiency or is hearing impaired. CPS must verify that the parent or PLR has read the removal consent form and understands the contents prior to signing it.

### b.  *Written notice*

When conducting a removal, CPS must provide the parent or PLR with a written notice at the time of the removal that includes the following information:

1. Their right to apply to Family Court for the return of their child
2. Their right to be represented by counsel and the procedures for indigent parents and PLRs to obtain free counsel in proceedings related to the removal
3. The name, title, organization, address, and telephone number of the person removing the child
4. The name, address, and telephone number of the authorized agency to which the child will be taken, if available
5. The telephone number of the person to be contacted to arrange for visitation with the child

CPS also must provide the parent or PLR with:

1. A copy of the signed consent form
2. The telephone number of the child protective agency to contact to ascertain the date, time, and place of the filing of the petition and of the hearing that will follow [FCA §1021].

OCA Court Form 10-1A can be used for the required notice for removals. See **Chapter 14,** *Appendices.*

### c. *Documentation requirement for removal with consent*

A copy of the signed consent must be attached to the abuse or neglect petition that names the removed child and it must also be made a part of the permanent court record of the proceeding. [FCA §1021]. CPS must document in the permanent case record in CONNECTIONS (CONNX) the circumstances of the removal, including specific information about the notifications provided to the child's parent or PLR.

### d. *Requirement to file petition*

Unless the child is returned sooner, a petition must be filed within three court days of the removal and a hearing must be held no later than the next court day after the petition is filed [FCA §1021].

## 3. Removal without consent – temporary order

### a. *Conditions necessary for temporary removal without consent*

The Family Court may enter an order directing the temporary removal of a child from the place where he/she is residing before an Article 10 petition is filed, if the parent or PLR is absent or, if present, was asked and refused to consent to the temporary removal of the child; removal is necessary to avoid imminent danger to the child's life or health; and there is not enough time to file an Article 10 petition and hold a preliminary hearing pursuant to FCA §1027. The parent or PLR must be given a notice (either verbally or in writing) with:

- CPS's intention to apply for an order under FCA §1022

- The date, time, and location of the court appearance, as soon as it is known

- A statement that the parent or PLR has the right to be present at the application and any hearing held concerning the application; the right to be represented by counsel; and the procedures for obtaining counsel if the parent or PLR is indigent [FCA §1023].

When a removal is necessary, but the parent or PLR is either unavailable or refuses to consent to the removal, the LDSS must file an application in Family Court for pre-petition temporary removal prior to the removal, when possible (See **Chapter 12:** *Notification of the removal of a child,* **Section D.**) If the child's life or health is in imminent danger and there is insufficient time to file for a temporary order, emergency removal may be appropriate [FCA §1024]. See **Chapter 6:** *Child Protective Services Investigations*, for more information. If, however, the Family Court is open and there is time to draft and file an application, CPS must file for a temporary order of removal.

### b. *Timeframe for court hearing*

When CPS files a request for a temporary order of removal prior to filing a petition, the court is required to calendar such an application for that day and continue the hearing on successive days until a decision is rendered [FCA §1022(a)].

### c. *Court determination authorizing temporary removal*

In determining whether temporary removal is necessary to avoid imminent risk to the child, the court must also consider and determine in its order whether continuation in the child's

home would be contrary to the best interest of the child and, where appropriate, whether reasonable efforts were made to prevent or eliminate the need for removal.

If the court determines that reasonable efforts to prevent or eliminate the need for removal were not made, but the lack of such efforts was appropriate under the circumstances, the court must include that finding in its order [FCA §1022(a)].

If the court determines that reasonable efforts should have been made but were not, the court must order CPS to provide or arrange for the provision of appropriate services or assistance to the child and he child's family, which may include preventive services [FCA §§1015-a and 1022(c)].

When the court determines, however, that reasonable efforts were not made, but the lack of such efforts was appropriate under the circumstances, the court must include that finding in its order. The court is also required to consider and determine whether imminent risk to the child would be eliminated by the issuance of a temporary order of protection directing the removal of a person or person(s) from the child's residence or an order to provide services [FCA §1022(a)].

Where a respondent parent or non-respondent parent is present at the removal hearing, the court advises the parent(s) of the allegations and appoints counsel for any indigent parent [FCA §§262(a) and 1022-a].

In any order directing temporary removal of a child, the court shall state its findings with respect to:

- The necessity of such removal
- Whether the respondent was present at the hearing and, if not, what notice the respondent was given
- Whether the respondent was represented by counsel and, if not, whether the respondent waived his or her right to counsel [FCA §1022(a)]

When the court determines the child will be temporarily removed, the Court must set a date certain for an initial permanency hearing [FCA §§1022(a) and 1089]

After the child has been removed, the court must issue a written order describing the location/facility where the child will be taken no later than the next court day [FCA §1022(b)].

Except when good cause is shown or unless the child is returned sooner, a petition alleging that the child is abused or neglected must be filed within 3 (three) court days of the issuance of the order directing temporary removal [FCA §1022(b)].

If the court determines after reviewing the LDSS investigation report that the child may reside with a non-respondent parent, relative, or other suitable person, the court must, at the pre-disposition stage of the Article 10 proceeding, take one of these actions:

- Grant a temporary order of custody or guardianship to such non-respondent parent, other relative or other suitable person pursuant to FCA Article 6 pending further order of the court
- Temporarily release the child directly to such non-respondent parent or temporarily place the child in the direct legal custody of a relative or other suitable person during the pendency of the proceeding or until further order of the court, whichever is earlier. The court may order the LDSS Commissioner to commence an investigation

of the home of such non-respondent parent, relative, or suitable person within 24 hours and report the results to the court

- Remand or place the child with the LDSS Commissioner and direct him/her to have the child reside with such relative or other suitable person and to commence an investigation of the home of the relative or other suitable person within 24 (twenty-four) hours and approve such person, if qualified, as a foster parent [FCA §1017(2)(a)]

CPS should reference 18 NYCRR 443 concerning criteria for investigating and approving a home of a relative. If the home is found to be unsuitable, the Commissioner must report such finding to the court [FCA §1017(1)].

Where no suitable non-respondent parent or relative is located, the court must place the child in the custody of a suitable person or remand or place the child to the custody of the LDSS Commissioner. When this occurs, the court has discretion to direct that the LDSS Commissioner have the child reside with a specific certified foster home when the court determines that such placement is in the furtherance of the child's best interests [FCA §1017(2)(b)].

### d. *Executing the removal*

When CPS removes the child in the execution of a temporary order of removal, he/she must provide the parent or PLR with the following information, in writing:

- The name, title, organization, address and telephone number of the person removing the child

- The name, address and telephone number of the child care agency to which the child will be taken

- The telephone number of the person to be contacted for visits with the child, if available

- Notice of the right to apply to the Family Court for return of the child under FCA §1028 [FCA §1022(d)]

If the child is removed and the parent or PLR is absent, the law requires that the notice be affixed to the door of the residence and a copy mailed to such person at his or her last known place of residence within 24 (twenty-four) hours [FCA §1022(d)]. Affixing the notice to the inside of the door is preferable to protect confidentiality. When this is not possible, the notice should be placed in a sealed envelope marked with the parent(s) name and affixed outside the door. (See **Chapter 12:** *Notification of the removal of a child*, **Section D**.*)*

The relevant OCA forms must be included, and are located on the OCA website at: https://www.nycourts.gov/forms/familycourt/childprotective.shtml

### 4. Emergency removal without court order or parental consent

#### a. *When emergency removal is permitted*

A peace officer acting pursuant to his or her special duties, police officer, law enforcement official, or designated LDSS employee must take all necessary measures to protect a child's life or health including, when appropriate, taking or keeping a child in protective custody [FCA §1024(a)].

A designated LDSS employee may take protective custody of a child without a court order and without the consent of the child's parent or PLR, even when the parent or PLR is absent,

if a designated LDSS employee has reasonable cause to believe that a child's continued residence in his or her home and/or in the care and custody of the parent or PLR presents an imminent danger to the child's life or health, and there is not time enough to apply to the court for a temporary order for removal.

An emergency removal should be used only when:

- A child is in imminent danger and the court is not open (e.g., on an evening, weekend, or holiday) **or**

- The court is open but it is too late in the day to prepare and file an application with the court **and**

- Circumstances require immediate action to safeguard the child

### b.  *Required procedures for an emergency removal*

When CPS conducts an emergency removal of a child, it must:

- Immediately bring the child to the relevant LDSS-approved agency (e.g., a Child Advocacy Center)

- Make every reasonable effort to notify the parent or PLR of the facility to which CPS has brought the child

- Provide written notice to the parent or PLR, which must include the following information:

    - The right of the parent or PLR to apply to the Family Court for the return of the child pursuant to FCA §1028

    - The right to be represented by counsel and procedures for an indigent parent or PLR to obtain counsel

    - The name, title, organization, address and telephone number of the person removing the child

    - The name, address, and telephone number of the authorized agency to which the child will be taken

    - If available, the telephone number of the person to be contacted for visitation with the child

    - Information relevant to the impending request by CPS for an order of temporary removal under FCA §1022, including CPS's intention to apply for the order, the date and the time the application will be made, the address of the court where the application will be made, the right of the parent or PLR to be present when the application is submitted, and the right of the parent to obtain counsel (or procedures for an indigent parent to obtain counsel) at any subsequent hearing [FCA §1024(b)].

### c.  *Method of serving the notice*

The notices described above must be personally served upon the parent or PLR at the child's residence. If, however, the parent or PLR is not present at the child's residence at the time of removal, a copy of the notice must be affixed to the door of such residence *and* a copy must be mailed to such person at his or her last known place of residence within 24 hours after the removal of the child.

If the place of removal is not the child's residence, a copy of the notice shall be personally served upon the parent or PLR without delay, or affixed to the door of the child's residence and mailed to the parent or PLR for the child's care at his or her last known place of residence within 24 hours after the removal [FCA §1024(b)].

When mailing the notice, CPS may send it either by regular or certified return receipt mail. CPS should note in the records when the notice is mailed, and in the case of the case of return receipt mail, when the receipt is received.

An affidavit of the service of the notice must be filed with the clerk of the court within 24 hours of serving the notice, exclusive of weekends and holidays [FCA §1024(b)].

When an emergency removal has been effectuated, CPS must inform the court and make a report to the SCR as soon as possible [FCA §1024(b)(iv)].

In every case where a child has been subject to an emergency removal without court order, CPS must make every reasonable effort to immediately communicate with the parents. If CPS determines that the case does not involve abuse and there is no imminent risk to the child's health, the child should be returned without delay [FCA §1026].

If, however, CPS determines this is a matter of abuse of a child, only the court may determine that the child may be returned after removal. Where appropriate, CPS may make a recommendation to the court that the child be returned or that no petition be filed [FCA §1026(a)].

When CPS returns the child to the parent or PLR and there is a plan to file a neglect petition, CPS may, but is not required to, condition the return upon the parent or PLR to write a promise that he/she will appear in Family Court when petitioned to do so. CPS may also require him/her to bring the child to court [FCA §1026(b)].

If the child is not returned, the LDSS must file a petition no later than the next court day after the child was removed. The court may order an extension for a petition of emergency removal (only upon good cause shown), of up to three court days from the date of the child's removal. A hearing must be held no later than the next court date after the petition is filed and findings must be made by the court [FCA §1026(c)].

# G. Hearings after filing a petition for removal of a child

A hearing is required after a petition is filed in any case in which a child was temporarily removed under one of the following circumstances:

- The child was removed without a court order
- A hearing was held in accordance with FCA §1022 (i.e., before a petition was filed) and the parent was not present
- Such a hearing was held and the parent was present but was not represented by counsel and did not waive the right to counsel

The Family Court must hold a hearing no later than the next court day after the filing of a petition to determine whether the child's interests require protection. At the hearing, the court must consider whether the child should be returned to the parent or PLR, pending a final order of disposition. The hearing must continue on successive days until a decision is made by the court.

When a child has been removed and the court has not ordered a final disposition, the person who initiated the petition (e.g., CPS or attorney for the child) may apply for a hearing at any time to determine whether the child's interests require protection, including whether the child should be returned to the parent or PLR and as to the necessity of an order of protection. The court may also order such a hearing at any time before disposition. In any case, a hearing must be scheduled for no later than the next court day after the application for the hearing has been filed or ordered [FCA §1027(a)].

## 1. Preliminary orders issued by the court at the hearing

### a. *Removals*

In determining whether ordering a removal of a child or continuing the removal is necessary to avoid imminent risk to the child`s life or health, the court must consider and state in its order:

- Whether continuation in the home or returning the child to his or her home would be contrary to the best interests of the child, **and**
- Where appropriate, whether reasonable efforts were made to prevent or eliminate the need for removal of the child from the home, **or**
- Where appropriate, that reasonable efforts were made to make it possible for the child to safely return home.

If the court finds that reasonable efforts were not made to prevent or eliminate the need for removal but the lack of such efforts was appropriate under the circumstances, the court must address this finding in its order.

If the court finds that reasonable efforts to prevent or eliminate the need for removal were not made but that such efforts were appropriate under the circumstances, the court must order the child protective services to provide or arrange for the provision of appropriate services and assistance to the child and the child's family.

The court must also consider and determine whether imminent risk to the child would be eliminated by the issuance of a temporary order of protection that directs the removal of the perpetrator(s) from the child's residence [FCA §1027(b)].

### b.  *Search for placement resources*

If the judge determines a removal is necessary to avoid imminent risk to the child`s life or health, the court must remove or continue the removal of the child. The court will immediately inquire as to the status of efforts made by the LDSS to locate relatives of the child, including any non-respondent parent and all of the child's grandparents [FCA §1027(b)].

For all categories of foster care, within 30 days of removal, the LDSS must exercise due diligence in identifying all of the child's grandparents, all parents of a sibling of the child where such parent has legal custody of the sibling and all other adult relatives, including adult relatives suggested by the child parent or parents, with the exception of grandparents, parents of a sibling of the child where the parent has legal custody of the sibling and/or other identified relatives with a history of family or domestic violence.

The LDSS must provide such persons with notification that the child has been or is being removed from the child's parents, which explains the options under which such persons may provide care either as a foster parent or direct legal custody or guardianship, and any options that may be lost by the failure to respond to such notification in a timely manner [18 NYCRR 430.11(c)(4)].

The court must also inquire as to whether the child, if over the age of five, has identified any relatives who play or have played a significant positive role in his or her life and whether any respondent or non-respondent parent has identified any suitable relatives. The inquiry will include whether any relative who has been located has expressed an interest in becoming a foster parent or otherwise for the child or in seeking custody or care of the child [FCA §1017(1)].

### c.  *Placement or remand*

Upon completion of the placement resources inquiry, the court may place or remand the child with one of the following a non-respondent parent, relative, or suitable person (including the custodial parent of a sibling or half-sibling).

The LDSS must begin an investigation of the home of the relative or other suitable person seeking custody or care of the child within 24 hours. If a relative or other suitable person has expressed an interest in becoming a foster parent for the child the LDSS must expedite the certification or approval of the relative or suitable person. If the home is found to be unsuitable, the LDSS must report that information to the court and other parties to the proceeding, including the attorney for the child, as soon as possible.

When the child is placed with the LDSS, the court may direct the LDSS to have the child reside with a specified relative or suitable person.  If the court does so, it must also direct the LDSS to begin an investigation of the home of the relative or suitable person within 24 hours.  If the home is found to be unsuitable, the LDSS must report that information to the court and other parties to the proceeding, including the attorney for the child, as soon as possible [FCA §1017(2)(a)].

***Contents of court order for removal or*** continuance ***of removal***

The court order for removal must include the following:

- The court's findings explaining the necessity of the removal or continuing the removal; and whether the respondent was present at the hearing

- If the respondent was not present, what notice of the hearing was provided to respondent
- If the child was removed pre-petition, whether such removal was conducted pursuant to FCA §1021 (removal with consent), FCA §1022 (temporary removal with court order) or FCA §1024 (emergency removal) [FCA §1027(b)]

If the court determines after the hearing that the child should be removed, the court will set a date for an initial permanency hearing. The court order must include the date for the initial permanency hearing and a copy of the order must be provided to the parent or PLR [FCA §1027(h)].

## 2. Other orders

### a. *Medical procedures*

The court may authorize a physician or hospital to provide medical or surgical procedures when the procedures are necessary to safeguard the child's life or health [FCA §1027(e)].

In all cases alleging abuse; the court ***must*** order an examination of the child by a physician. When the order alleges neglect; the court ***may*** order a medical examination. The examining physician must arrange to have color photographs taken of visible trauma, as soon as practical. The physician may, if indicated, also arrange for radiological tests on the areas of visible trauma. Unless color photographs have already been taken or there are no areas of visible trauma, the court must arrange that color photos be taken even if it does not order a physical exam [FCA §1027(g)].

#### *Order of Protection (OOP)*

The court may issue a preliminary order of protection that may contain any of the provisions authorized under FCA §1056 [FCA §1027(c)].

### b. *Visitation by respondent after removal*

Any respondent in an Article 10 proceeding must be granted reasonable visitation with the child placed in temporary custody of the LDSS (i.e., a child in foster care) unless it is determined by the court that such visitation would endanger the life or health of the child. The court may order the LDSS to supervise the visitation. If the LDSS challenges the respondent's right to visitation, the respondent may appeal to the court for an order granting visitation at stated intervals [FCA §1030]

#### *Removal after a petition has been filed*

The LDSS may remove a child at any point after a petition has been filed. However, the LDSS must notify the child's parents or PLR of the same information as required for removal and proceed in accordance with FCA §1021 (temporary removal with consent); FCA §1024 (emergency removal without consent); or FCA §1027 (removal with court order).

## H. Summonses and required notifications

On the same day the petition is filed and the child has been removed, unless a warrant was issued in accordance with FCA §1037, the court must issue a summons and provide copies of the petition to the parent or PLR. The front page of the summons must clearly state "Child Abuse Case," as applicable, and must require the parent, PLR, or person with whom the child had been residing to appear in court for a hearing within three court days to answer the petition (unless a shorter period of time is ordered) [FCA §1035(a)].

When a petition is filed and the child has *not* been removed from his or her home, the court shall forthwith cause a copy of the petition and the summons to be served, clearly marked on the face thereof "Child Abuse Case," as applicable, requiring the person served to appear in court for a hearing within seven court days [FCA §1035(c)].

Where there will be a proceeding to determine abuse or neglect, the summons must contain a statement in conspicuous print informing the respondent that:

- The proceeding may lead to the filing of a petition for the termination of the respondent's parental rights and commitment of guardianship and custody for the purpose of adoption, and

- If the child is placed and remains in foster care for 15 of the most recent 22 months, the agency may be required by law to file a petition for termination of respondent's parental rights and commitment of guardianship and custody of the child for the purpose of adoption [FCA §1035(b)].

The summons and petition must be served on both parents of the child, regardless of whether one, both, or neither of the parents is named as a respondent [FCA §1035(d)].

### 1. Notice of pendency of a child protective proceeding

Where the respondent is not the child's parent, the summons and the petition must also be accompanied by a notice of the pendency of the Article 10 proceeding. This notice must inform each parent of his or her right to appear and participate in the hearing as an interested party intervenor for the purpose of seeking temporary and permanent custody of the child, and to participate in all arguments and hearings insofar as they affect the temporary release or custody of the child during fact-finding proceedings and in all phases of dispositional proceedings. The notice must also advise the parent(s) of their right to counsel, including assigned counsel [FCA §1035(d)]. The OCA has notices on its website that include all the required notifications: https://www.nycourts.gov/forms/familycourt/childprotective.shtml

CPS should, when practical, speak with the parent(s) before filing a child abuse or neglect petition to advise them of their decision to file, unless it has been determined the parent(s) are a potential flight risk.

If a petition alleges abuse, the Family Court may also require production of the child at a specific time and place [FCA §1035(c)].

The court is permitted to authorize the service of a summons to non-New York State residents or non-domiciled respondents when the allegedly abused or neglected child resides or is domiciled in New York State and the alleged abuse or neglect occurred within New York State [FCA §1036(c)].

## 2. Notice of removal for a non-custodial parent

The summons, petition, and notice of pendency of a child protective proceeding served on the child's non-custodial parent must include notification that the child was removed from his or her home, if applicable. The notice must:

- Provide the name and address of the official to whom temporary custody of the child has been transferred

- Provide the name and address of the agency with whom the child has been temporarily placed, if different, and

- Advise the non-custodial parent of their right to request temporary and permanent custody and to seek enforcement of their visitation rights

The court must provide non-respondent parents with a notice of pendency of child protective proceedings that advises the parents of their right to intervene. This notice must accompany the summons and petition served on all non-respondent parents [FCA §1035(e)].

## 3. Intervention by other interested people

If the parent consents, a child's adult sibling, grandparent, aunt, or uncle not named as a respondent in the petition may intervene in the proceeding as an "interested party intervenor" for seeking temporary or permanent custody of the child.

Parental consent is not required, however, if the parent does not appear in court. When this occurs, the interested relatives must obtain the Family Court's permission to intervene. The court may permit the interested relatives to participate in all subsequent hearings concerning the temporary and/or permanent placement of the child. The law advises the Family Court to liberally grant motions by interested relatives for intervenor status.

The intervenor, (i.e., a non-respondent parent or relative granted permission to intervene) has the right to participate at the fact-finding hearing and other hearings that may affect the temporary custody of the child. Intervenors may also participate in all phases of the dispositional hearing [FCA §1035(f)].

Although the court has the authority to issue and serve summonses, conduct hearings and grant intervenor status, CPS caseworkers do have a role in these decisions, particularly with regard to intervention and its possible effect on the plan for the child. Because the law advises the court to liberally grant motions for intervenor status, CPS must obtain as much information as possible related to the willingness and capability of non-respondent parents and other relatives to provide temporary and/or permanent care for the removed child.

CPS is obligated to make reasonable efforts to prevent placement [18 NYCRR 430.10(b)]. At the dispositional hearing, the Family Court is required to determine that such efforts have been made before approving a foster care placement. Briefly, the regulations require the LDSS to:

1. Provide preventive services to the family and child, unless the offer of services has been refused

2. Attempt to locate adequate living arrangements with a relative or family friend that would enable the child to avoid foster care placement

3. Document in the case record that preventive services have been offered and the reasons why preventive services were not able to prevent placement

4.  Attempt to place a child of a minor parent in foster care in the same foster home or residential facility as the minor parent in foster care without the LDSS assuming care and custody of the child

5.  Where applicable, document in the case record that it was not possible to place such a child with the minor parent who is in foster care

The court may also ask the LDSS for information and recommendations concerning the child and the family and about suitable placement options.

After the fact-finding hearing, the court on its own authority or upon a motion of the respondent, the petitioner, or the attorney for the child may order a reasonable adjournment of the proceedings to allow time to enable the court to make inquiry into the surroundings, conditions and capacities of the persons involved in the proceedings [FCA §1048(b)].

# I. Adjournment in contemplation of dismissal (ACD)

## 1. Provisions for adjournment in contemplation of dismissal (ACD)

An ACD is an adjournment of a proceeding for up to 1 (one) year with the consent of the petitioner, respondent and attorney for the child, which may lead to a dismissal of the petition [FCA §1039(a)]. Upon the consent of the petitioner, the respondent(s) and the attorney for the child, the court may issue an order extending the period of the ACD for such time and upon such conditions as may be agreeable to the parties to the proceeding [FCA §1039(b)].

An ACD order may describe the terms and conditions agreeable to the parties and the court. However, every ACD order must include the requirement that the child and the respondent(s) be under CPS supervision during the adjournment period [FCA §1039(c)]. If CPS is not the primary service provider, CPS must monitor the provision of any rehabilitative services provided to the family [18 NYCRR 432.2(b)(4&5)].

An ACD order will direct CPS to submit a progress report to the court, the relevant parties, and the attorney for the child within 90 (ninety) from the issuance of the order, unless the court states the report is not required. The court may also direct CPS to submit additional reports to the court, the relevant parties, and the attorney for the child [FCA §1039(c)].

**The LDSS may make a motion before the court requesting that an ACD be issued prior to or upon the fact-finding hearing.** An ACD or the extension of an ACD may be granted only with the consent of the LDSS, the respondent(s), and the attorney for the child. If any of the parties do not consent to the ACD, the court may not order an ACD. The court may not order a party to consent to an ACD [FCA §1039(a)].

The court may grant an ACD only after it has informed the respondent as to the legal provisions related to ACDs and it is satisfied the respondent understands the applicable law [FCA §1039(a)].

> ### When to consent to an ACD
>
> Because an ACD will usually result in a dismissal of the case, it is not advisable for an LDSS to consent to an ACD when the case is serious enough to require placement of the child(ren). CPS should consent to an ACD only when the dismissal of the petition would be in the furtherance of justice and would not endanger the child. An ACD cannot serve as a placement order.

At any time during the duration of an ACD order, upon application of the respondent, petitioner, attorney for the child, or upon the court's own motion, if CPS has failed substantially to provide the respondent with adequate supervision or to observe the terms and conditions of the order, the Family Court may direct CPS to provide the respondent with adequate supervision or to observe the terms and condition required by the order [FCA §1039(d)].

During the ACD period, based on its own motion or on the application of the petitioner or attorney for the child, the court may restore the matter to the calendar if it finds after a hearing that the respondent has failed substantially to observe the terms and conditions of the order or to cooperate with CPS. In such event, unless the parties consent to an order sustaining or dismissing the petition pursuant to FCA §1051, or unless the petition is dismissed upon the consent of the petitioner, the court shall proceed to a fact-finding hearing within 60 (sixty) days of such application unless the period is extended by the court [FCA §1039(e)].

Upon the expiration of the ACD, the petition will be dismissed in furtherance of justice, unless the case has been restored to the court's calendar due to the respondent's failure to comply with the terms and conditions of the ACD [FCA §1039(f)].

## 2. Factors determining CPS's consent to an ACD

As stated above, when an LDSS is the petitioner in an Article 10 proceeding, the Family Court may not grant an ACD unless the LDSS (and other parties) consent.

OCFS regulations require that the LDSS consider several factors to determine if the LDSS should consent to an ACD. These factors include, but are not limited to:

1.  Whether the terms of the order will include requirements that the child's parent(s) or guardian(s) avail themselves of rehabilitative services and/or refrain from the types of conduct which caused the alleged abusive or neglectful behavior that necessitated the filing of the child protective petition

2.  Whether the evidence which CPS could introduce to prove that the respondent(s) abused or neglected a child will be available at a subsequent fact-finding hearing which would be held if the conditions of the ACD order were violated

3.  The seriousness of the alleged incidents of child abuse or neglect;

4.  The likelihood that the child will be abused or neglected after the issuance of an ACD order;

5.  The amount of cooperation which the respondent(s) is/are willing to provide to CPS to help alleviate the circumstances which resulted in the alleged abuse or neglect of the child; and,

6.  Whether the terms of the ACD order can be made sufficiently clear so that compliance with its provisions may be adequately monitored by CPS [18 NYCRR 432.11(b)].

The same six factors should be used by CPS to determine whether to submit its own motion for an ACD.

## 3. CPS requirements for ACDs

When all parties consent and the Family Court grants an ACD, the LDSS will be required to supervise the child and the respondent(s) during the entire ACD period. Within 90 days of the issuance of the ACD, the LDSS is required to report to the court, respondents and attorney for the child, unless the court determines that a report is not required [FCA §1039(c)].

If the respondent substantially fails to comply with any terms of the ACD, the LDSS should request that the original petition be restored to the court calendar [FCA §1039(e)].  If it does, the motion filed by the LDSS must describe how the ACD terms were violated.

The court must conduct a fact-finding hearing no later than 60 days after the request to restore the petition to the court's calendar is granted, (unless there is an adjudication by consent or the petition is dismissed). The court may extend the 60-day time limit for good cause [FCA §1039(e)].

A violation of an ACD order will not result in an automatic finding of abuse or neglect and/or an immediate dispositional hearing. The judge must conduct or continue the fact-finding hearing that was adjourned by the ACD order. The court may not enter an adjudication of abuse or neglect unless a fact-finding hearing has been held, and has resulted in a finding of abuse or neglect.[4]

At the fact-finding hearing, CPS must provide a fair preponderance of evidence that the respondent abused or neglected the child [FCA §1046(b)]. Non-compliance with an ACD on its

---

[4] Matter of Marie B., 62 NY 2d 352, 477 NYS2d 87

own is not sufficient for a finding of abuse or neglect. However, CPS may file another petition alleging any additional actual facts concerning parental abuse or neglect that could support a judicial finding of abuse or neglect.

CPS must notify the attorney for the child if the respondent is the named subject (or other person named) in an indicated report of child abuse or maltreatment at any time during the term of the ACD [FCA §1039-a].

Sixty days before the expiration of an ACD, CPS must submit a report to the court and the attorney for the child [FCA §1058].

## J.  Rules and standards for Family Court hearings

### 1.  Rules and standards of evidence

The following rules and standards apply to evidence presented in **any** hearing conducted under Article 10 or Article 10-A of the Family Court Act [FCA §1046]:

> **Types of hearings**
>
> A "fact-finding hearing" is a hearing in Family Court to determine whether a child is an abused or neglected child as defined in the FCA.
>
> A "dispositional hearing" is a hearing to determine what order of disposition should be made.

1.  Proof of the abuse or neglect of one child is admissible evidence on the issue of the abuse or neglect of any other child of the respondent or on the legal responsibility of the respondent.

2.  Proof of injuries sustained by a child or of the condition of a child of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omission of the parent or other person legally responsible for the care of such child shall be prima facie evidence of child abuse or neglect, as the case may be, of the parent or other person legally responsible.

3.  Proof that a person repeatedly misuses drugs or alcoholic beverages, to the extent that it has the effect of producing in the user a substantial state of stupor, unconsciousness, intoxication, hallucination, disorientation, or incompetence, or a substantial impairment of judgment, or a substantial manifestation of irrationality, is prima facie evidence that a child of such person is a neglected child, except if that person is voluntarily and regularly participating in a recognized rehabilitative program.

4.  Any writing, record, or photograph made concerning a child in an abuse or neglect proceeding made by any hospital or other public or private agency is admissible as evidence, if the judge finds that it was made in the regular course of business of the hospital or other agency; that it was part of the regular business of the hospital or agency to make such a writing, record or photograph; and that it was made at the time of the act or event recorded or within a reasonable time thereafter. A certification by the head of the hospital or agency, or that person's designee, that it is the full and complete record; that it was made in the regular course of business; and that it was the regular course of business of the hospital or agency to make such a record will be prima facie evidence of the facts contained in the certification. Other circumstances of the making of the record or photograph, including lack of personal knowledge of the maker, may affect the weight given to the evidence, but not its admissibility.

5.  Any report made to the SCR by a mandated reporter is admissible evidence.

6.  Previous statements made by the child relating to any of the allegations of abuse or neglect are admissible but, if they are uncorroborated, the statements are not sufficient to make a fact-finding of abuse or neglect. Any other evidence tending to support the reliability of the statements, including, but not limited to, the types of evidence described in this list, are sufficient corroboration. The testimony of the child is not necessary to make a fact-finding of abuse or neglect.

7.  Evidence that is otherwise admissible may not be excluded based on the privilege attaching to confidential communications between husband and wife, physician and patient, psychologist and client, social worker and client, or rape crisis counselor and client.

8. Proof of the "impairment of emotional health" or "impairment of mental or emotional condition" as a result of the unwillingness or inability of the respondent to exercise a minimum degree of care toward a child may include competent opinion or expert testimony and may include proof that such impairment lessened during a period when the child was in the care, custody or supervision of a person or agency other than the respondent.

The following rules and standards apply in a fact-finding hearing in a Family Court:

1. A determination that a child is an abused or neglected child must be based on a **preponderance of evidence.** ("Preponderance of the evidence" means that it is more likely than not that the child was abused or neglected.)

2. Whenever a determination of severe or repeated abuse is based on clear and convincing evidence, the fact-finding order must state that the determination is based on clear and convincing evidence.

3. Only competent, material, and relevant evidence may be admitted, except as otherwise provided in Article 10. ("Competent" evidence is evidence that is admissible in court. As used here, it means evidence must be admissible under the general rules of evidence, except as provided for in the list above. "Material" evidence is evidence that helps to prove or disprove a matter in issue. "Relevant" evidence is evidence that makes the existence of a matter in issue more or less probable.)

Only material and relevant evidence may be admitted in dispositional hearings and all other proceedings under Article 10, except fact-finding hearings, and in permanency hearings and all other proceedings under Article 10-A. The statute does not require that evidence in dispositional hearings and permanency hearings be "competent," which means it does not necessarily have to be admissible under the general rules of evidence.

## 2.  Sequence of hearings

Upon completion of the fact-finding hearing, the dispositional hearing may begin immediately after the required findings are made [FCA §1047(a)].

Reports prepared by a probation service or a duly authorized entity for use by the court for the making of a disposition are confidential. The court must make them available to all counsel for inspection and copying. The court may, in its discretion, withhold from disclosure a part or parts of the information that is not relevant to a proper disposition, or are obtained on a promise of confidentiality, or where disclosure would not be in the interests of justice or in the best interests of the child. When the court does this, it must state in the record that parts of the report have not been disclosed and state the reasons for that action. Such action by the Court is subject to review on appeal from the order of disposition. Such reports may not be furnished to the court prior to the completion of a fact-finding hearing, but may be used in a dispositional hearing [FCA §1047(b)].

## 3.  Sustaining or dismissing a petition

After the fact-finding hearing, the court may:

- Enter a finding that a child is an abused or neglected child and state the grounds for the finding, if there are facts established sufficient to sustain the petition or if all parties and the attorney for the child consent.

- Amend the allegations if the proof presented does not conform to the specific allegations in the petition. The court may amend the allegations to conform to the proof, provided that the respondent is given sufficient time to answer the amended allegations.

- Dismiss the petition and state on the record the grounds for dismissal if facts are not established sufficient to sustain the petition or, in a case of alleged neglect, the court concludes that its aid is not required [FCA §1051(a)-(c)].

If a court makes a finding of abuse or neglect, it must decide, based on the facts before it, whether a preliminary order pursuant to FCA §1027 is required to protect the child's interests pending a final order of disposition. The court must state the grounds for its determination. Also, if a child is found to be abused or neglected and the court finds that the final order of disposition is likely to be an order of placement under FCA §1055, the child may be removed and placed in foster care by the LDSS or placed in the custody of a suitable person by the court, pending an order of final disposition [FCA §1051(d)].

If a court makes a finding of abuse, it must cite the specific paragraph(s) of the law that defines an abused child that has or have been established. If the court finds that the child has been sexually abused, it must specify the specific sex offense as defined in the Penal Law, and also may enter a finding of severe abuse or repeated abuse as defined in SSL §384-b. This finding is admissible in a proceeding to terminate parental rights. If the court makes a finding of severe or repeated abuse, it must state the grounds for its determination, which must be based upon clear and convincing evidence [FCA §1051(e)].

Before accepting an admission to an allegation or permitting a respondent to consent to a finding of neglect or abuse, the court must inform the respondent that such an admission or consent will result in the court making a fact-finding order of abuse or neglect, and must also inform the respondent of the potential consequences of such an order, including but not limited to the following:

1. The court will be able to make an order of disposition, which may include placing the child(ren) in foster care

2. The placement of children in foster care may, if the parent fails to maintain contact with or plan for the future of the child, lead to proceedings for the termination of parental rights and to the possibility of adoption of the child; and

3. The report made to the SCR upon which the petition is based will remain on file for ten years after the 18th birthday of the youngest child, the respondent will be unable to obtain expungement of the report, and the existence of the report may be made known to employers seeking to screen employee applicants and to child care agencies if the respondent applies to become a foster parent or adoptive parent.

If the court fails to give such notice prior to an admission or consent, the admission or consent will be vacated upon motion of any party [FCA §1051(f)].

## 4.  Disposition on adjudication

After a dispositional hearing, the Family Court must issue an order of disposition and explain the grounds for the particular disposition [FCA §1052(a) and (b)]. The Family Court may:

- Issue a suspended judgment [FCA §1053] (See **Section L,** *Expiration of orders.*)

- Release the child to a non-respondent parent or parents, or to a legal custodian(s) or guardian(s) who is not a respondent in the proceeding [FCA §1054] (See **Section L,** *Expiration of orders.)*

- Place the child in the custody of a relative, a suitable person, the LDSS Commissioner, or a duly authorized agency, as permitted by FCA §1055

- Grant custody of the child to a respondent parent or parents, a relative, or a suitable person pursuant to FCA Article 6 [FCA §1055-b]

- Issue an order of protection [FCA §1056]

- Release the child to the respondent(s) and, at the court's discretion, place the respondent(s) under the supervision of CPS, the LDSS or a duly authorized agency [FCA §1057]

- Grant custody of the child to a non-respondent parent or parents [FCA Article 6]

When the dispositional order releases the child to a respondent, non-respondent parent, legal custodian, or guardian, and the order was issued on the consent of the parties and the attorney for the child, CPS must submit reports within 90 days after the order of disposition was issued and no later than 60 days prior to the expiration of the order. However, the court may determine that such reports are not required [FCA §§1054(d) and 1057(c)].

When the dispositional order includes a suspended judgment; the court may order CPS to submit progress reports on the implementation of the order. Where the order of disposition was issued upon the consent of the parties and the attorney for the child, the report must be submitted within 90 days after the order is issued, unless the court determines the report is not required [FCA §1053(c)].

# K. Disposition on adjudication

## 1. Suspended judgment

A suspended judgment is a dispositional order that sets conditions for a specific period of time during which the respondent has an opportunity to make corrective action that may result in the case being dismissed.

The terms and conditions of a suspended judgment must relate directly to the act or omissions of the parent or PLR. The maximum duration of a suspended judgment is one year, unless the court determines that exceptional circumstances require an extension for one additional year [FCA §1053]. The LDSS has the option to file a violation petition if the LDSS determines a parent or PLR has violated the terms and conditions of the suspended judgment order [FCA §1071].

If the child is in foster care, the suspended judgement order must set forth the visitation plan between the respondent and the child and between the child and his or her siblings, and require the authorized agency to notify the respondent of case conferences [22 NYCRR 205.83(a)].

A suspended judgment order must contain at least one of the following terms and conditions that relate to the adjudicated acts or omissions of the respondent, directing the respondent to:

1. Refrain from or eliminate specified acts or conditions found at the fact-finding hearing to constitute or to have caused neglect or abuse

2. Provide adequate and proper food, housing, clothing, medical care, and for the other needs of the child

3. Provide proper care and supervision to the child and cooperate in obtaining, accepting or allowing medical or psychiatric diagnosis or treatment, alcoholism or drug abuse treatment, counseling or child guidance services for the child

4. Take proper steps to ensure the child's regular attendance at school

5. Cooperate in obtaining and accepting medical treatment, psychiatric diagnosis and treatment, alcoholism or drug abuse treatment, employment or counseling services, or child guidance, and permit CPS to obtain information from any person or agency from whom the respondent or the child is receiving or was directed to receive treatment or counseling [22 NYCRR 205.83(a)].

It may be helpful for the suspended judgment order to contain other terms or conditions that are relevant to the respondent's or child's circumstances, such as requiring the respondent to

- Attend parenting classes and demonstrate the ability to use the skills from such classes with the child

- Cooperate in obtaining mental health services for the child, participate in the child's therapy as requested by the child's therapist, and demonstrate an understanding of the child's mental health needs

## 2. Release to a non-respondent parent, legal custodian, or guardian

A dispositional order may release a child for up to one year to a non-respondent parent or to a person who was the child's legal custodian or guardian when the petition was filed and who is not a respondent in the Article 10 proceeding. Such dispositional order may be extended for up to one year for good cause [FCA §1054(a)].

The person to whom the child is released may be required to submit to the jurisdiction of the court for the period of placement and/or extension. The order may include, but is not limited to, a direction for the person(s) to cooperate in making the child available for:

- Court-ordered visitation with respondents, siblings, and/or other people

- Appointments with and visits by CPS, including visits in their home and in-person contact with CPS caseworkers, social service officials or a duly authorized agency

- Appointments with the attorney for the child, clinician or other individual or program that provides services to the child [FCA §1054(b)]

The dispositional order must describe the terms and conditions applicable to the non-respondent parent, CPS, LDSS, and any duly authorized agency. The court also may issue either of the following orders:

- An order directing that services be provided to the respondent parent [FCA §1015-a]

- An order of protection in conjunction with an order releasing a child to a non-respondent parent, legal custodian or guardian [FCA §1056(1)]

An order of disposition that releases the child to the non-respondent parent, custodian, or guardian may require CPS to submit progress reports to the court, relevant parties, and attorney for the child. When the order of disposition is issued upon consent of the relevant parties and the attorney for the child, CPS must report to the court, the parties, and the attorney for the child no later than 90 days after the order is issued and no later than 60 days after the expiration of the order, unless the court determines progress reports are not required based on the facts and circumstances of the case [FCA §1054(d)].

### 3.  Placement in foster care

The court may issue an order of disposition to place a child in the custody of:

- A relative or other suitable person, or

- The local Commissioner of Social Services.

If the court finds a child to be a sexually exploited child as defined in SSL §447-a, the court may place the child in the custody of the LDSS Commissioner for placement in a long-term safe house.

The court may also place the child in the custody of the LDSS Commissioner and direct the Commissioner to place the child with a relative or other suitable person who has indicated a desire to become a foster parent for the child [FCA §1055(a)].

If the Family Court places a child, the court must state that continuation in the child's home would be contrary to the best interests of the child, and, where appropriate, that reasonable efforts were made prior to the date of the dispositional hearing to prevent or eliminate the need for removal of the child from his or her home.

If the child was removed from the home prior to the date of the dispositional hearing, the court must state that such removal was in the child's best interests and, where appropriate, reasonable efforts were made to make it possible for the child to safely return home [FCA §1052(b)(i)].

Reasonable efforts to prevent or eliminate the need for removal or to make it possible or the child to return home safely *are not required* if the court determines that aggravated circumstances, as defined in FCA §1012(j), exist; or if the parent has been convicted of specified counts of murder or manslaughter of his or her child, has been convicted of other specified crimes where the victim

was a child or if the parental rights of the parent to a sibling of such child have been involuntarily terminated [FCA §§1039-b and 1052(b)].

If the court finds that the LDSS has not made reasonable efforts to prevent or eliminate the need for placement, and that such efforts would be appropriate, the court shall direct that the LDSS to provide or to arrange for the provision of services or assistance for the child and family, pursuant to FCA §1015-a [FCA §1052(b)]. The court may require an LDSS official to make periodic progress reports to the court on the implementation of such an order [FCA §1015-a]. When the court orders the LDSS to provide services for this reason, the court may adjourn the hearing for a reasonable period of time if the court determines that additional time is necessary and appropriate for the LDSS to make such efforts [FCA §1052(b)].

### a. *Permanency hearings*

If the court orders the placement of the child in the care and custody of the LDSS Commissioner, the placement will continue until the court completes the initial permanency hearing. The date certain for the initial permanency hearing will be specified in the placement order, and must begin no later than eight months from the date the child was removed [FCA §1055(b)].

If the child's sibling or half-sibling was previously removed and has a permanency hearing date certain scheduled within eight months, the permanency hearing date certain for each will be the sibling's or half-sibling's, unless the sibling was placed in accordance with FCA Article 3 or 7 [FCA §1055(b)].

The Family Court has continuing jurisdiction over the parties in cases where a child is placed under Article 10 until the child is discharged from placement by the court or all orders regarding supervision, protection or services have expired. Foster care placement continues until further orders of the court [FCA §1088]. Permanency hearings must be completed within 30 days of the date certain set for those hearings [FCA §1089(a)].

### b. *Notice of permanency hearings*

No later than 14 days before a scheduled permanency hearing, the LDSS must serve a notice of the permanency hearing and the permanency hearing report (PHR) via regular mail to the following:

- The child's parent and any non-respondent parent (unless their parental rights have been terminated or surrendered) and any PLR, at the most recent address or addresses known by the LDSS
- The child's current foster parent
- The agency supervising the care of the child on behalf of the LDSS (where applicable)
- The attorney for the respondent parent
- The attorney for the child
- Any pre-adoptive parent or other relative caring for the child

The notice only (minus the Permanency Hearing Report) must be provided to the child if age 10 or older. Notice also must be sent to any former foster parent with whom the child resided continuously for at least 12 months, unless the court dispenses with the notification to the former foster parent on the basis that it is not in the child's best interests.

The foster parent currently caring for the child pre-adoptive parents and other relatives have the right to be heard in court, but are not parties to the proceedings solely on the basis of receiving notice and having the right to be heard [FCA §1089(b)].

### c.  *Permanency Hearing Report (PHR)*

The PHR is a sworn document that must include, but is not limited to, up-to-date and accurate information related to:

1. The child's permanency goal
2. The health, well-being, and status of the child since the last permanency hearing, including:
   - A description of the child's health and well-being
   - Information about the child's current placement
   - Information about the child's educational progress
   - Description of visitation plan(s)
   - Description of services and assistance provided to a child age 14 or older, related to learning independent living skills
   - Description of any other services provided to the child
3. The current status of the parent, including his or her progress
4. Reasonable efforts made by the LDSS or other agency since the last hearing to effectuate the permanency plan, including any concurrent planning for an alternative permanency plan for a child who is not likely to return home
5. The recommended permanency plan, including any changes in the current plan

An evaluation of the child's safety should be a significant factor in the LDSS's decision to recommend to the court either that the child return home, remain in care, or have another

---

> ### *Creating the PHR*
>
> The PHR is generated in CONNECTIONS (CONNX) from the Permanency window. There are three types of PHRs available in the system:
>
> - Individual child (PH-1)
> - Multiple children in the same case who are not completely legally freed (PH-2)
> - Individual child who is completely legally freed for adoption (PH-3)
>
> No address information for any of the participants in a permanency hearing (including the child's address and school location) should be included in the PHR. Confidential HIV-related information may be included *only* if all persons receiving the report are authorized to have access to it.
>
> Any worker with a role in the case can launch a PHR. He/she can select "pre-fill" or "no pre-fill" as an option. Selecting "pre-fill" will produce a document that includes most recent information from the Family Assessment and Service Plan (FASP), Plan Amendments, Removal Updates, and Health and Education modules. If the "pre-fill" option is selected, it is *essential* that the caseworker review the information so make sure it is appropriate, accurate, and up to date.
>
> The report must be kept in draft form until all required reviews have taken place. Once the report is marked as final, it can no longer be edited. It can then be printed and filed with the court. Copies must be mailed to the required parties (08-OCFS-ADM-01). If reports are sent by e-mail, they must be password-protected. ACS workers and contract agency workers in New York City must upload PHRs to the Legal Tracking System (LTS).

permanency planning goal. In evaluating the present safety of the child, the LDSS should also focus on why the child was previously determined to be unsafe and placed into out-of-home care, and on what would have to occur for the child to return home safely, even when services may still be necessary.

### d. *Permanency hearing findings*

At the close of the permanency hearing, the court must make specific findings related to the child's best interests, including determining whether placement should be terminated and the child returned home. If the child will not be returned home, the court must determine whether reasonable efforts have been made to finalize the permanency plan.

LDSS or VA staff may be responsible for carrying out the court's orders related to the placement of a child. The LDSS must make diligent efforts to encourage and strengthen the parental relationship (when those efforts will not be detrimental to the child). Diligent efforts may include:

- Assisting the parent in obtaining adequate housing, employment, counseling, medical care or psychiatric treatment
- Encouraging and facilitating visitation with the child and the parent/PLR
- Encouraging and facilitating visitation with the child and any non-custodial parent and/or grandparents who have obtained an order of visitation
- Encouraging and facilitating visitation with the child and his or her siblings, including half siblings or those who would be deemed siblings or half siblings but for the termination of parental rights or death of a parent

If necessary, the LDSS or VA staff may be responsible for instituting a proceeding to legally free the child for adoption [FCA §1055(c) and (d)].

### e. *Placement with relatives*

The Family Court may direct the LDSS Commissioner to place the child with a relative. The LDSS should consult the following policies issued by the Office of Children and Family Services (OCFS):

- 86 ADM-33, Requirements for Approval of Relative Foster Boarding Homes and Policy on Use of Relatives as Foster Care Providers or as Alternatives to Placement
- 88 ADM-48, Expansion of Population Eligible to Become Approved Relative Foster Parents
- 09-OCFS-ADM-05, New Statutes Affecting Kinship Care: Chapters 404 and 519 of the Laws of 2008
- 11-OCFS-ADM-03, Kinship Guardianship Assistance Program (KinGAP).
- 12-OCFS-LCM-03, Kinship Guardianship Assistance Program Payments - Excludable Income for Child Care Subsidy Program Eligibility
- 14-OCFS-LCM-15, Accurate Reporting of Kinship Foster Care Placements
- 16-OCFS-ADM-10, Continuation of the Kinship Guardianship Assistance Program (KinGAP) to A Successor Guardian

OCFS regulations for approving relatives as foster parents are found in 18 NYCRR 443, which also includes the standards for approving relative foster parent homes on an emergency basis. A child may not be placed in an alternative living setting if there is a court

order giving the LDSS care and custody of the child. Such a court order signifies that the child is a foster child must be placed in a licensed, certified or approved foster home or facility. If the child has medical or psychiatric needs that require hospitalization, such a placement is appropriate.

## 4. Order of protection (OOP)

An order of protection requires a person to comply with a specific condition and/or to refrain from a specific activity or behavior. An order of protection may be issued in conjunction with another order or may be issued independently of any other orders [FCA §1056(1)].

An order of protection may order the respondent to:

- Stay away from the home, school or business or place of employment of the child, other spouse, parent, or person otherwise legally responsible for the child's care and to stay away from any other specific location designated by the court

- Refrain from committing a family offense as defined in FCA §812 or any criminal offense against the child, other parent, or any person to whom custody of the child is awarded or from harassing, intimidating, or threatening such persons

- Refrain from acts of omission or commission that create an unreasonable risk to the health, safety, and welfare of the child

- Provide for medical care and/or treatment, either directly or by medical or health insurance, for expenses incurred as the result of the incidents that led to the order of protection

- Refrain from intentionally injuring or killing, without justification, a companion animal the respondent knows to be owned, possessed, leased, kept, or held by the person protected by the order of protection or a minor residing in such person's household

- Promptly return specified identification documents to the person protected by the order of protection (e.g., birth certificates, DMV registration)

- Permit a parent or other person entitled to visitation by a court order or separation agreement to visit the child at stated periods

- Permit a designated party to enter the residence during a specified time period to remove personal belongings not at issue in the Article 10 proceeding or in another proceeding under the FCA or Domestic Relations Law

- Observe such other conditions as the court finds necessary to further the protection of the child

### a. *Orders of protection issued in conjunction with other court orders*

A Family Court may issue an order of protection alone in assistance or in conjunction with another order. When an order of protection is issued with another order, the order of protection and the other order will remain in effect for the same period. The court may also extend both orders [FCA §1056(1)].

### b. *Orders of protection issued independently of other orders*

The Family Court also has the option of issuing an order of protection independently of any other dispositional order. A court may issue an order of protection independently when a child needs to be protected from a person who was a member of the child's household or a PLR and is no longer a member of the child's household at the time of

the disposition and is not related to the child by blood or marriage. An order of protection issued against such a person no longer in the child's household or related to the child may remain in effect for any period of time up to the child's 18th birthday and may contain such conditions as the court deems necessary and proper to protect the health and safety of the child and/or the child's caretaker [FCA §1056(4)].

## 5.  Order of supervision

Upon disposition, or at any time during an Article 10 proceeding, the Family Court may release the child to the respondent(s) for a period of up to one year and the court may extend the period for up to one additional year for good cause. In conjunction with such an order, the court may place the respondent(s) under the supervision of the LDSS, CPS, or other authorized agency [FCA §§1027(d) and 1057(a)].

An order of supervision directs the respondent to comply with specific terms and conditions and the actions that the child protective agency or other supervising entity must take to exercise the supervision [FCA §1057(b)].

An order of supervision may also be issued in conjunction with:

- An order releasing the child to a non-respondent parent or to a person who was the child's legal custodian or guardian at the time the petition was filed who is not a respondent to the Article 10 proceeding pursuant to FCA §1054
- An order placing the child pursuant to FCA §1055
- An order of protection issued pursuant to FCA §1056 [FCA §1057(b)]

Any orders of supervision issued by the Family Court are only applicable to persons who are respondents in Article 10 proceedings. A court may not place a non-respondent under the supervision of CPS.

An order of supervision must contain at least one of the following terms and conditions, requiring that the respondent:

1. Observe any of the terms and conditions set forth in 22 NYCRR 205.83 (a), including refraining from specified acts or conditions; providing adequate food, clothing housing, and medical care; providing proper care and supervision, including obtaining medical care or substance abuse treatment; assuring attendance at school; and cooperating in obtaining medical or substance abuse training, employment, or counseling services.

2. Cooperate with the supervising agency in remedying specified acts or omissions found at the fact-finding hearing to constitute or to have caused the neglect or abuse.

3. Meet with the supervising agency alone and with the child when directed to do so by that agency.

4. Report to the supervising agency when directed to do so by that agency.

5. Cooperate with the supervising agency in arranging for and allowing visitation in the home or other place.

6. Notify the supervising agency immediately of any change of residence or employment of the respondent or of the child.

7.  Do or refrain from doing any other specified act of omission or commission that, in the judgment of the court, is necessary to protect the child from injury or mistreatment and to help safeguard the physical, mental and emotional well-being of the child [22 NYCRR 205.83(b)].

### a.  *Reporting requirements for orders of supervision*

When a court issues an order of supervision, the court may require CPS to submit progress reports to the court, the parties, and the attorney for the child. When an order of disposition is issued upon the consent of the parties and the attorney for the child, CPS must submit a report no later than 90 days after the order is issued and no later than 60 days prior to the expiration of the order. However, the court has the authority to waive the submission of any progress reports [FCA §1057(c)].

# L. Expiration of orders

CPS must submit a status report to the court, the parties (including the non-respondent parent) and the attorney for the child no later than 60 days prior to either:

- The expiration of any order issued at the conclusion of the dispositional hearing that suspends judgement, releases the child to a non-respondent parent, legal custodian or guardian, issues an order of protection, or releases the child to the respondent or places the respondent under supervision or both; **or**

- The conclusion of the period of an adjournment in contemplation of dismissal (ACD) [FCA §1058].

Such a report is not required when an application has been made for an extension of a dispositional order or an adjournment, or, with respect to an ACD dismissal, no violations of the court's ACD order are before the court. CPS is required to make such a report whether or not the child has been or will be returned to the family. The report must include information about the status and circumstances of the child and family and any actions taken or contemplated by CPS with respect to the child and family [FCA §1058].

## M. Termination of reasonable efforts in aggravated circumstances

The LDSS may request permission from the court to cease reasonable efforts to reunify a child with the parent when aggravated circumstances exist [FCA §1039-b]. The aggravated circumstances that justify a request to the court to cease reasonable efforts include [FCA §1012(j)]:

1. The child was found to be severely or repeatedly abused.

2. The child was found to be abused within five years after being returned from a foster care placement that was made due to a neglect finding, provided that the respondent(s) in each of the proceedings is the same.

3. The court has found by clear and convincing evidence that the parent of a child in foster care has refused and has failed completely, over at least six months from the date of removal, to engage in necessary services to eliminate the risk of abuse or neglect if returned to the parent, and has failed to secure services on his or her own or otherwise adequately prepared for the return of the child; and, after the receipt of prescribed notices, has stated in court under oath that he or she intends to continue to refuse such necessary services and is unwilling to secure such services independently or otherwise prepare for the child's return.

   If the court determines that the parent had adequate justification for his or her failure to engage in or obtain services, the court will not permit the discontinuation of reasonable efforts. Adequate justification includes, but is not limited to, lack of child care, no transportation, and work schedule conflicts with necessary services.

4. A child five days old or younger was abandoned by a parent with an intent to wholly abandon such child and with the intent that the child be safe from physical injury and cared for in an appropriate manner.

# N. Termination of parental rights due to severe or repeated abuse

Parental rights may be terminated on the grounds of severe or repeated abuse [SSL §384-b(8)]. LDSS staff should consult with their agency attorney when a parental rights termination based upon severe or repeated abuse is being considered.

## 1. Severely abused child

A child is "severely abused" by his or her parent when any one of these situations exists [SSL §384-b(8)(a)]:

- Reckless or intentional acts by the parent have been committed under circumstances evincing a depraved indifference to human life, which have resulted in serious physical injury to the child as defined in Penal Law §10.00(10).

- The court has made a finding of sexual abuse as defined in FCA §1012(e)(iii) and the parent has violated or knowingly allowed another to violate any of the following sections of the Penal Law:[5]

  | | |
  |---|---|
  | 130.25 | Rape in the 3rd Degree |
  | 130.30 | Rape in the 2nd Degree |
  | 130.35 | Rape in the 1st Degree |
  | 130.40 | Criminal Sexual Act in the 3rd Degree |
  | 130.45 | Criminal Sexual Act in the 2nd Degree |
  | 130.50 | Criminal Sexual Act in the 1st Degree |
  | 130.65 | Sexual Abuse in the 1st Degree |
  | 130.67 | Aggravated Sexual Abuse in the 2nd Degree |
  | 130.70 | Aggravated Sexual Abuse in the 1st Degree |
  | 130.75 | Course of Sexual Conduct Against a Child in the 1st Degree |
  | 130.80 | Course of Sexual Conduct Against a Child in the 2nd Degree |
  | 130.95 | Predatory Sexual Assault |
  | 130.96 | Predatory Sexual Assault Against a Child |

- The parent has been convicted of a crime under the following sections of the Penal Law:

  | | |
  |---|---|
  | 125.27 | Murder in the 1st Degree |
  | 125.25 | Murder in the 2nd Degree |
  | 125.20 | Manslaughter in the 1st degree |
  | 125.15 | Manslaughter in the 2nd Degree |

  and the victim of any such crime was another child of the parent or another child for whose care such parent is or has been legally responsible; or another parent of the child, unless the convicted parent was a victim of abuse by the decedent parent and such abuse was a factor in causing the homicide; **or**

  the parent has been convicted of an attempt to commit any of the crimes listed above, and the victim or intended victim was the child or another child of the parent or another child for whose care such parent is or has been legally responsible or another parent of

---

[5] For the purpose of termination of parental rights in regard to a severely abused child, the collaboration requirements contained in the Penal Law for these offenses do not apply.

the child, unless the convicted parent was a victim of abuse by the decedent parent and such abuse was a factor in causing the attempted homicide.

- The parent has been convicted of Criminal Solicitation as defined in Penal Law Article 100, Conspiracy as defined in Penal Law Article 105 or Criminal Facilitation as defined in Penal Law Article 115 for conspiring, soliciting, or facilitating any of the foregoing crimes, and the victim or intended victim was the child or another child of the parent or another child for whose care such parent is or has been legally responsible.

- The parent has been convicted of Assault 2nd Degree as defined in Penal Law §120.05, Assault 1st Degree as defined in Penal Law §120.10, or Aggravated Assault as defined in Penal Law §120.12 and the victim of any such crime was the child or another child of the parent or another child for whose care such parent is or has been legally responsible; or has been convicted of an attempt to commit any of the foregoing crimes, and the victim or intended victim was the child or another child of the parent or another child for whose care such parent is or has been legally responsible.

- The parent has been convicted under the law in any other jurisdiction of an offense that includes all of the essential elements of any crime specified above.

In addition, in order for the court to find that a child was severely abused, the agency must have made diligent efforts to encourage and strengthen the parental relationship, including efforts to rehabilitate the respondent, when such efforts will not be detrimental to the best interests of the child, and such efforts have been unsuccessful and are unlikely to be successful in the foreseeable future. If, however, the Family Court determined that reasonable efforts to make it possible for the child to return safely to his or her home are not required, the agency shall not be required to demonstrate such diligent efforts.

## 2. Repeatedly abused child

A child is a "repeatedly abused child" by his or her parent when [SSL §384-b(8)(b)]:

The court has made a finding of abuse in accordance with FCA §1012(e)(i) or as defined in FCA §1012(e)(iii); provided, however, that in the latter circumstance, the parent must have committed or knowingly allowed to be committed a felony sex offense in violation of the felony sex offense sections of the Penal Law listed above under "severely abused child"; **and**

The child or another child for whose care such parent is or has been legally responsible has been previously found, within five years immediately preceding the initiation of the proceeding in which such abuse is found, to be an abused child, as defined in FCA §1012(e)(i) or §1012(e)(iii). For a finding under FCA §1012(e)(iii), however, the parent must have committed or knowingly allowed the commission of a felony sex offense in violation of the sections of the sex offense sections of the Penal Law listed above under "severely abused child"; **or**

The parent has been convicted of a sexual offense listed above under "severely abused child" against the child, a sibling of the child, or another child for whose care such parent is or has been legally responsible, within the five-year period immediately preceding the initiation of the Article 10 proceeding in which abuse is found; **and**

The agency must have made diligent efforts to encourage and strengthen the parental relationship, including efforts to rehabilitate the respondent, when such efforts will not be detrimental to the best interests of the child, and such efforts have been unsuccessful and are unlikely to be successful in the foreseeable future. If, however, the court has previously

determined that reasonable efforts to make it possible for the child to return safely to his or her home are not required, the agency is not required to demonstrate diligent efforts.

The Family Court may also make a finding of severe or repeated abuse against a person who is not a parent of the abused child. This includes any PLR as defined by FCA §1012(g) who resides in the household of the abused child [FCA §1051(e)].

The law also allows an adjudication of derivative severe abuse regarding the children of the PLR, so these children may also be protected. A derivative finding refers to a determination by the court that the behavior of the respondent in abusing or maltreating one child poses sufficient harm or risk of harm to other children residing in the home that the respondent should also be deemed to have been abusive or neglectful of those other children (See 16-OCFS-INF-09.).

## O. Abandoned child (under age one)

The following procedures must be followed in a child protective proceeding when a child under the age of one has been abandoned [FCA §1055(b)(ii)].

Where neither of the parents appear after due notice, the court must direct the LDSS in the Article 10 disposition order to:

- Commence a diligent search to locate the child's non-appearing parent or parents or other known relatives who are legally responsible for the child
- Commence a proceeding pursuant to SSL §384-b to commit guardianship and custody of such child to an authorized agency within six months of when the LDSS assumed care and custody of the child, unless there has been communication and visitation between the child and such parent or parents, other known relatives, or persons legally responsible

The LDSS must also provide written notice to the child's parent or parents, other known relatives, or persons legally responsible.

Courts sometimes vary regarding the level of diligent effort required to ascertain a parent's whereabouts. The caseworker should attempt to check with as many of the following as possible.

- Social media
- Internet search engine
- The local telephone book, directory assistance, and any persons having the same name as the missing parent
- Last known address through registered or certified mail
- Family members or friends
- Federal agencies, such as the Social Security Administration
- U.S. Postal Service
- State agencies:
  - Department of Motor Vehicles
  - Department of Corrections and Community Supervision
  - New York State Police
  - Department of Health (death certificate)
  - Unemployment Insurance Office (must have parent's Social Security number)
  - Department of Taxation and Finance
- Parent Locator Service (used for child support enforcement)
- Putative Father Registry
- Local law enforcement agencies
- Any additional leads or sources of information

The search must be conducted as quickly as possible and all efforts must be documented in the child's case record [FCA §1055(b)(ii)]. If parents or other known relatives are located, the LDSS must give them a written notice in Spanish and English including the following information:

- The LDSS must commence a proceeding to terminate parental rights six months from the date the LDSS assumed care and custody of the child

- The parent has not visited or communicated with the child since the child's placement into foster care

- If no such visitation or communication between the parent and the child occurs within six months of placement, the child will be deemed to be an abandoned child and a proceeding will be commenced to commit guardianship and custody to the LDSS

- The LDSS has the legal responsibility to reunite and reconcile families whenever possible and to offer services and assistance for that purpose

- The name, address and telephone number of the assigned LDSS caseworker who can provide information, services, and assistance with respect to reuniting the family

- It is the parents', relatives' or other legally responsible person's responsibility to visit and communicate with the child and that such actions may avoid the necessity of initiating a proceeding to commit the guardianship and custody to an authorized agency [FCA §1055(b)(iii)]