UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re the Application of:

Idalia Dominguez Ochoa, and Marco Antonio Aragon
Leon,

                         Petitioners,

                v.

Wendi Ochoa Perez, Elias Sanchez Corona, Isaias
Sanchez Ochoa, Irene Trujilo Ascenio,

                      Respondents.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __4/7/2025__

24 CV 4736 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

       Petitioners Idalia Dominguez Ochoa (the "Mother") and Marco Antonio Aragon Leon (the
"Father") (both together, the "Petitioners") brought this case against Wendi Ochoa Perez
("Wendi"), Elias Sanchez Corona ("Elias"), Isaias Sanchez Ochoa ("Isaias") and Irene Trujilo
Ascenio ("Irene") (all together, the "Respondents") pursuant to the Hague Convention on the Civil
Aspects of International Child Abduction (the "Hague Convention"), and the International Child
Abduction Remedies Act, 22 U.S.C. § 9001 *et seq*. ("ICARA"), seeking the immediate return of
their two daughters, J.A.D. and W.Y.A.D. (both together, the "children"), who are three (3) and
ten (10) years of age, to Mexico. (ECF No. 12.)

       Presently before the Court is Respondents' Motion to Dismiss Petitioners' First Amended
Verified Petition. After carefully considering the evidence, the parties' briefs, and the applicable
law, Respondents' Motion to Dismiss is DENIED.

**BACKGROUND**

The following facts are taken from the First Amended Verified Petition ("FAVP" or the "Petition"), which the Court must take as true and construe in favor of the Petitioners:

Petitioners are the parents of J.A.D. and W.Y.A.D., minor children born in Morelos, Mexico. (FAVP ¶ 2.) Respondents include Wendi, the minor children's maternal grandmother, Elias, the husband of Wendi, Isaias, the son of Wendi, and Irene. (*Id*. ¶ 3.) Respondents reside at 53 Lander Street, Floor 1, Newburgh, NY 12550. (*Id*.)

Before being retained in New York, J.A.D. and W.Y.A.D. spent their entire lives in Mexico. (*Id*. ¶ 11.) Petitioners assert that pursuant to Mexican civil law and jurisprudence they retain parental and custody rights over J.A.D. and W.Y.A.D. (*Id*. ¶ 12.) At the time of the purported wrongful retention of J.A.D. and W.Y.A.D., Petitioners were exercising their rights of custody and would have continued doing so if not for the Respondents' retention of the children. (*Id*. ¶ 13.)

Petitioners had decided as a family to move to New York, and that the best strategy for doing so was for the Father to cross the United States-Mexico Border with J.A.D. and W.Y.A.D. (*Id*. ¶ 14.) Once they successfully crossed into the United States, the Mother would immediately attempt to enter the United States herself. (*Id*.) Petitioners intended that the children would return to and reside in Mexico until the family could move together as a single unit to the United States. (*Id*.)

This effort ultimately failed, as the Father was detained for two months in a detention facility in Tuscon, Arizona. (*Id*. ¶ 15.) J.A.D. and W.Y.A.D., in the interim, were taken to the Respondents by the people they crossed the border with. (*Id*.) The Father returned to Morelos, Mexico and requested that Respondents return J.A.D. and W.Y.A.D. to Mexico, but Respondents refused and to date continue to refuse to do so. (*Id*.) On or about July 2023, Respondents cut off

2

all communication between Petitioners and J.A.D. and W.Y.A.D., and the Petitioners have neither seen nor heard from their children since then. (*Id.*)

## PROCEDURAL HISTORY

On July 25, 2024, Petitioners filed a First Amended Verified Petition for Return of Children to Mexico pursuant to the Hague Convention and ICARA. (ECF No. 12.) Respondents filed their motion to dismiss Petitioners' First Amended Petition, along with their memorandum of law in support on December 10, 2024 ("Mot."). (ECF Nos. 29 and 30.) Petitioners filed their memorandum of law in opposition to Respondents' motion to dismiss ("Opp."). (ECF No. 31.) Finally, Respondents filed their reply memorandum of law in further support of their motion to dismiss ("Reply"). (ECF No. 32.)

## LEGAL STANDARD

The Hague Convention "seeks to secure the prompt return of children wrongfully removed to or retained in any Contracting State, and to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." *Abbott v. Abbott*, 560 U.S. 1, 8 (2010). The United States is a Contracting State to the Hague Convention, which has been implemented through ICARA. *Id*. at 9. The central remedy under the Hague Convention is the return of the child to his or her habitual residence. *Id*. "When a child under the age of 16 has been wrongfully removed or retained, the country to which the child has been brought must 'order the return of the child forthwith,' unless certain exceptions apply." *Id*. (quoting Hague Convention, Arts. 4, 12.) "Any person seeking to initiate judicial proceedings under the Convention for the return of a child . . . may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action . . . ." 22 USCS § 9003(b).

The Hague Convention provides that

[t]he removal or the retention of the child is to be considered wrongful where (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

*Abbott*, 560 U.S. at 8 (quoting Hague Convention, art. 3.)  Therefore, to establish a *prima facie* case of wrongful retention under the Hague Convention, a petitioner must demonstrate by a preponderance of the evidence that

(1) the child was habitually resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention.

*Gitter v. Gitter*, 396 F.3d 124, 130–31 (2d Cir. 2005).  Once a petitioner establishes a *prima facie* case, the child must be returned to the place of habitual residence unless "one of the affirmative defenses set forth in Articles 12, 13, and 20 applies."  *Cruvinel v. Cruvinel*, No. 19-CV-4237 (LDH) (SIL), 2022 WL 757955, at *5 (E.D.N.Y. Jan. 10, 2022).

## DISCUSSION

Respondents seek dismissal of Petitioners' First Amended Verified Petition, arguing that Petitioners failed to state a *prima facie* case of wrongful retention under the Hague Convention. The Court will evaluate the sufficiency of Petitioners' First Amended Verified Petition below.

## I.     J.A.D. and W.Y.A.D.'s Habitual Residence

The Second Circuit has articulated a two-prong inquiry to ascertain a child's habitual residence. "First, the court should inquire into the shared intent of those entitled to fix the child's residence (usually the parents) at the latest time that their intent was shared. In making this determination the court should look, as always in determining intent, at actions as well as declarations. Normally the shared intent of the parents controls the habitual residence of the child.

4

Second, the court should inquire whether the evidence unequivocally points to the conclusion that the child has acclimatized to the new location and thus acquired a new habitual residence, notwithstanding any conflict with the parents' latest shared intent." *Gitter*, 396 F.3d 124, 135 (2d Cir. 2005).

Regarding the first *Gitter* factor, Respondents argue that Petitioners' shared intent was to "abandon their previous habitual residence in Mexico and acquire a 'new habitual residence' with family already in the United States." (Mot. p. 7.) Respondents cite to Petitioners' explicit acknowledgment in their Petition that their intent was that the family would move to the United States as a single unit from Mexico. (FAVP ¶ 14.) Respondents are correct to note that "abandonment of the original country of habitual residence" is a relevant factor in determining the habitual residence of the purportedly wrongfully retained children. *Rodriguez v. Lujan Fernandez*, 500 F. Supp. 3d 674, 702 (M.D. Tenn. 2020). However, Respondents' characterization fatally oversimplifies the efforts of Petitioners. It is true that Petitioners sought to permanently move from Mexico to the United States; however, such a move was conditional on the family moving together, not solely J.A.D. and W.Y.A.D.

This is akin to *Mota v. Castillo*, 692 F.3d 108 (2d Cir. 2012), wherein the Second Circuit affirmed the District Court's finding that the habitual residence of the children therein was Mexico, not the United States. In *Mota*, the child, Elena, initially had a habitual residence of Mexico until she was brought to the United States, in accordance with her parents' intentions. *Id.* at 114. Respondents thereby argued that Elena abandoned her habitual residence of Mexico. *Id.* The Court was not persuaded and noted that while the parents intended to abandon their residence of Mexico, the only intended to do so as a family unit. *Id.* Accordingly, Elena being in the United States was necessary – but not sufficient – to establish the United States as her habitual residence. Given

5

Elena's parents were unsuccessful in their efforts to join her in the United States, the Second Circuit ultimately affirmed a finding that Mexico remained Elena's habitual residence. *Id*.

The allegations in the Petition reflect the same dynamic. The Petition explicitly states that Petitioners' intention was for the family to move from Mexico to the United States together, and that, upon unsuccessfully moving as a single unit, the family was to return together to Mexico. (FAVP ¶ 14.) Petitioners, like the parents in *Mota*, failed to successfully enter the United States as a single unit, and thus returned to Mexico and, correspondingly, sought the return of their children to Mexico, in accordance with their original intent that the family would only move in such a way that they end up together. (*Id*.) Therefore, per *Mota*, the first prong of the *Gitter* habitual residence analysis favors the Court finding that Mexico remains J.A.D. and W.Y.A.D's habitual residence, as it cannot be argued that Petitioners' abandoned Mexico as their habitual residence.

The second prong of the *Gitter* habitual residence analysis likewise counsels finding that Mexico remains the habitual residence of J.A.D. and W.Y.A.D. Based on the allegations of the Petition and Respondents' motion, it is not evident that J.A.D. and W.Y.A.D. have acclimated to their new environment in New York such that they acquired a new habitual residence. First, the Court notes that the Second Circuit has counseled that courts "should be 'slow to infer' that a child's acclimatization 'trumps the parents' shared intent.'" *Id*. at 115-16. Indeed, "only in 'relatively rare circumstances' in which a child's degree of acclimatization is 'so complete that serious harm … can be expected to result from compelling his [or her] return to the family's intended residence' might we conclude that the child's habitual residence has shifted to his or her new location." *Id*. This is especially the case given the Second Circuit's articulated principle that it would "frustrate the objectives of the Convention if a parent or guardian could secure an

advantage in an anticipated custody dispute by . . . merely retaining a child [] long enough to amass evidence of the child's acclimatization to a new location." *Id*.

In light of such axioms and given the allegations in the Petition support a finding that Mexico remains the habitual residence of J.A.D. and W.Y.A.D., if determined to be accurate, the Court would be reticent to find that J.A.D. and W.Y.A.D.'s time in the United States should trump Petitioners' shared intent to enter into the United States as a single-family unit or return to Mexico, in the alternative, as a single-family unit. Therefore, the Petition, as alleged, supports a finding that Mexico remains their habitual residence.

## II.    Whether Respondents' Retention Was Wrongful

The final question within the *Gitter* wrongful retention analysis is whether the Respondents' retention of J.A.D. and W.Y.A.D. can be characterized as a wrongful retention. This question ultimately turns on whether the Petitioner is able to satisfy the threshold set by the second and third factors of the *Gitter* wrongful retention standard. The second factor in the *Gitter* analysis is whether the Respondents' retention of J.A.D. and W.Y.A.D. was in breach of Petitioners' custodial rights. This determination is made in reference to the "'custody rights under the law of the State of [the] habitual residence' and whether evidence shows that [Petitioners' were] exercising those rights at the time of the retention—or would have been exercising those rights but for the retention." *Mota*, 692 F.3d 108 at 116-17.

Mexico's custodial laws "places a series of correlative rights and obligations on the holder of parental authority." Patricia Begne, *Parental Authority and Child Custody in Mexico,* 39 Fam. L.Q. 527, 531 (2005) (quoting Amparo Directo 2078/1974, Victor Manual Martinez Fernandez (1975)). These include "custody of the minors, the authority to raise them, discipline them, represent them in legal acts, administer their property, feed and care for them," in addition to

choosing their place of domicile. *Id*. at 531, 534; *Mota* 692 F.3d 108 at 117. It follows, then, that Respondents' "retention of [J.A.D. and W.Y.A.D.] in the United States violates, [as alleged], [Petitioners'] right[s] under Mexican law to maintain physical custody of [their] daughter[s,]" satisfying the second factor of the *Gitter* analysis. *Mota*, 692 F.3d at 117.

As to the third *Gitter* factor, whether at the time of retention Petitioners were exercising their custodial rights, based on the Petition's allegations, specifically that Petitioners "seek [their daughters] return to Mexico so [they] can continue to care for [their] daughter[s], and meet [their] parental obligations," the Court must conclude, as alleged, that Petitioners were indeed utilizing their parental rights at the time of Respondents' retention of J.A.D. and W.Y.A.D. *Id*.; *see* (FAVP ¶¶ 14-16.) Taking the Petition's factual averments as true and construing them in the light most favorable to the Petitioners, the allegations are "consistent[] only with the conclusion that [Petitioners] would be exercising [their] parental authority now were it not for [J.A.D. and W.Y.A.D.'s] retention by [Respondents]." *Mota*, 692 F.3d at 117. Therefore, given that Petitioners have satisfied the second and third factors of the *Gitter* analysis, the Court must conclude that Respondents' retention of J.A.D. and W.Y.A.D constitutes wrongful retention under the Hague Convention. By extension, the Court finds that Petitioners have successfully alleged a *prima facie* case for wrongful retention under the Hague Convention and declines to dismiss the Petition.

## CONCLUSION

For the foregoing reasons, Respondents Wendi Ochoa Perez, Elias Sanchez Corona, Isaias Sanchez Ochoa and Irene Trujilo Ascenio's Motion to Dismiss Petitioners Idalia Dominguez Ochoa and Marco Antonio Aragon Leon's First Amended Verified Petition for relief under the Hague Convention is DENIED. The parties are directed to appear for a teleconference on teleconference on April 10, 2025 at 12:00 PM EST. To access the Webex Teleconference: (1) Dial

the Meeting Number: 855-244-8681; (2) Enter the Access Code: 2310 494 3855; and (3) press pound # to enter the teleconference. The Court notes that it anticipates, in the future, the need to conduct an evidentiary hearing and that the parties should begin to plan accordingly. The Court further notes that to the extent the parties may require an interpreter, the parties themselves bear the costs of retaining such services and are only permitted to make use of a certified interpreter for the purpose of participating in Court proceedings. The Clerk of Court is kindly directed to terminate the motion at ECF No. 29.

Dated: April 7, 2025                                    SO ORDERED:
White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge